REYNOLDS SPRING COMPANY, A DELAWARE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16345.    Promulgated January 31, 1949.

*Thomas G. Long, Esq.*, for the petitioner.
*Cecil H. Haas, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: This proceeding involves deficiencies in excess profits tax for the taxable period January 1 to September 30, 1940, and the taxable year ended September 30, 1941, in the respective amounts of $44,437.50 and $63,075.36.

The sole issue is the amount by which petitioner's equity invested capital for the periods involved is to be reduced by reason of a distribution in kind, not out of accumulated earnings and profits, of the shares of General Leather Co., which cost petitioner $2,412,875.83 in 1924 and had a market value of $742,830 at the time of distribution in 1931.

All of the facts are stipulated and are as follows:

1. Petitioner was incorporated under the laws of the State of Delaware on July 2, 1919, as the Jackson Cushion Spring Company, its name later being changed to Reynolds Spring Company. It is engaged in the business of manufacturing cushion spring constructions for sale principally to the automobile manufacturers and molded plastics, and has its principal office at Water and Bridge Streets, Jackson, Michigan.

2. Petitioner received permission from the Commissioner on March 20, 1940, to change, effective September 30, 1940, its taxable year from the calendar year to the fiscal year ending September 30. Petitioner filed its income and excess profits tax returns for the fiscal year beginning January 1, 1940 and ending September 30, 1940 and for the fiscal year beginning October 1, 1940 and ending September 30, 1941, the taxable periods involved herein, with the Collector of Internal Revenue for the District of Michigan, at Detroit.

3. In 1924 petitioner acquired all of the outstanding common capital stock, consisting of 6,438 shares of General Leather Company, a New Jersey corporation, having its principal place of business at Newark, New Jersey. The value of such stock on the books of General Leather Company at that time was $2,412,875.83 which was also the value assigned to such stock on the books of petitioner. In payment for such stock, petitioner issued 210,548 shares of its common stock; the book value per share of petitioner's outstanding common stock immediately prior to such acquisition of General Leather Company stock was $11.46 per share, and on the basis of such book value per share 210,548 shares of petitioner's common stock with an aggregate book value of $2,412,875.83 were issued in payment. Said sum of $2,412,875.83 was credited to petitioner's capital stock account with respect to such acquisition of all the common stock of General Leather Company and was the fair market value thereof on the date of acquisition by petitioner.

4. Subsequent to such acquisition of all of the General Leather Company common stock by petitioner but prior to March 31, 1931, the General Leather Company stock was split approximately 23 shares for 1 share, thereby effecting an increase in all of its outstanding common stock from 6,438 to 148,566 shares, which was the same number of shares as the number of shares of stock of petitioner then outstanding and such increase was made to facilitate a dividend distribution in kind of the General Leather Company stock.

Petitioner's board of directors on December 27, 1930, declared a liquidating dividend of General Leather Company stock payable March 31, 1931, the resolution with respect to which provided in part as follows:

That after the taking effect of the reduction of the outstanding com-

mon capital stock of no par value of Reynolds Spring Company to 148,566 shares that a liquidating dividend of such General Leather common stock to every share of Reynolds Spring Company stock (new) be and the same , is hereby declared payable on March 31st to the common no par value stockholders of record on March 14, provided that the preferred stock of the Reynolds Spring Company is totally cancelled or totally owned by Reynolds Spring Company by February 28, 1931.

By February 28, 1931, all of petitioner's preferred stock previously issued had been retired and cancelled, and on March 31, 1931 petitioner distributed in kind to its stockholders all of the General Leather Company stock which it owned consisting of 148,566 shares of common stock, which were the same number of shares as the number of shares of petitioner's outstanding stock, by transferring to each of petitioner's stockholders one share of such General Leather Company stock in respect of each share of petitioner's stock held.

5. Immediately prior to the time of such distribution of the stock of General Leather Company, petitioner had an earned surplus deficit of $698,760.84. At the time of the distribution such stock of General Leather Company had a fair market value of $5.00 per share, or $742,830.00, for all of such shares so distributed. The book value of $2,412,875.83 of such stock was charged to capital surplus by petitioner.

6. In computing excess profits tax credit based on invested capital in its said excess profits tax returns for the taxable periods involved in this proceeding, petitioner included said $2,412,875.83 in equity invested capital as money (or property) paid in for stock and used said sum of $742,830.00 with respect to said liquidating dividend of all the stock of General Leather Company, as a distribution made prior to the taxable years not out of accumulated earnings and profits in reduction of its equity invested capital.

7. Respondent in the deficiency notice determined in part as follows:

It is held that in determining equity invested capital pursuant to the definition contained in Section 718 of the Internal Revenue Code, as amended, the reduction to be effected under Section 718 (b) (1) is in an amount of $2,412,875.83, the value assigned the 6,438 shares of General Leather Company stock in determining the value of property paid in for stock, Section 718 (a) (2), instead of $742,830.00, the amount determined by you to be the fair market value of such stock in 1931 when it was distributed in kind by corporate action to your several stockholders.

\* \* \* \* \* \* \*

The above adjustment of $1,691,492.66 to average equity invested capital includes an item of $1,670,045.83 ($2,412,875.83 minus $742,830.00) which represents the difference between the cost of 6,438 shares of General Leather Company stock acquired in 1924, and the value thereof in 1931 as explained in the forepart of this statement.

The narrow question presented is the amount by which petitioner's equity invested capital shall be reduced by reason of its distribution of General Leather Co. shares in kind to its stockholders in a year prior to the taxable year, which distribution was not out of earnings and profits.

The respondent takes the position that the petitioner's equity invested capital is to be reduced by the cost to the petitioner of the property distributed. Petitioner contends that the amount of the

reduction is the fair market value of the property at the time of its distribution.

Equity invested capital, of course, is a statutory concept. *La Belle Iron Works* v. *United States*, 256 U. S. 377. Section 718 (b) of the Internal Revenue Code purports to prescribe the amounts by which "equity invested capital" should be reduced in order to meet the definition of that term as contained in section 718 (a). It is true that section 718 (b) and the statute generally are silent as to the basis to be used in determining the amount by which "equity invested capital" shall be reduced by virtue of the distribution in kind of property paid in for stock. However, subsection (2) of section 718 (a) clearly states what basis shall be used in determining the amount which shall be included in invested capital for property (other than money) paid in for stock. Thus that subsection provides "Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." It is not disputed that petitioner's cost of its shares of capital stock of the General Leather Co. was $2,412,-875.83. Nor is it contested that this General Leather Co. stock was and should have been included in petitioner's equity invested capital under section 718 (a) (2) of the Internal Revenue Code at that figure. Logic and common sense would seem to indicate that the same basis be used here in reducing the invested capital where the distribution is in kind, not out of earnings and profits.[1]

We sustain the respondent's reduction of petitioner's invested capital for the taxable periods involved by that amount, to wit: $2,412,-875.83, the cost to petitioner of the stock distributed in kind to its stockholders. Cf. *R. D. Merrill Co.*, 4 T. C. 955.[2]

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARUNDELL, *J.*, dissents.

---

[1] Mertens Law of Federal Income Taxation, vol. 7A, p. 598; Montgomery's Federal Taxes, 1946–47, vol. II, pp. 411, 412.

[2] One of the issues involved in that case was the effect on earnings and profits of a distribution of property having a fair market value of less than cost. It was held that earnings and profits should be charged with cost of the property and not its fair market value at the time of distribution. In so holding we there said, at page 962:

"* * * When property, as such, is distributed, it is no longer a part of the assets of the corporation, and the investment therein goes with it. That investment is the cost. An investment of corporate assets in property is not a mere book entry, as is indeed proven when it is distributed in kind. The investment is a *res* converted from money into property, remaining in that form earnings and profits; and, when distributed, is no longer either earnings or profits or owned by the corporation. When the *res* distributed leaves the corporation, that investment, i. e., that amount of corporate assets, also leaves, actually and physically; and nothing less than a charge of cost, i. e., the money originally converted to property, will represent the true financial situation. * * * Our conclusion is based upon mere realism: To charge earnings and profits with fair market value instead of a greater cost would create a book situation altogether contrary to the facts. * * * A corporation can make no distribution of dividends without something to distribute, and any distribution of more than the residue left in earnings and profits must, necessarily and mathematically, be from either capital or paid-in surplus. * * *"