**CONSOLIDATED ELECTRONICS IN-
DUSTRIES CORP.,**

v.

**The UNITED STATES.**

No. 546–53.

United States Court of Claims.

May 1, 1956.

Clifford H. Domke, Jackson, Mich., for plaintiff. McKone, Badgley, Domke & Kline, Jackson, Mich., were on the briefs.

George Willi, Washington, D. C., with whom was Charles K. Rice, Acting Asst. Atty. Gen., for defendant. Andrew D. Sharpe and Elizabeth B. Davis, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The Consolidated Electronics Industries Corp. (formerly the Reynolds Spring Company, hereinafter referred to as plaintiff) sues to recover $8,049.80, as an overpayment of interest on excess profits tax deficiencies for the period January 1, 1940, to September 30, 1940, and for the fiscal year ended September 30, 1941. The facts are not in dispute.

The plaintiff filed its income and excess profits tax returns for the period January 1, 1940, to September 30, 1940, and for the fiscal year ended September 30, 1941 (hereinafter referred to as years 1940 and 1941, respectively), and paid the taxes shown due thereon. On its returns for these years plaintiff computed its excess profits credit under the equity invested capital method, which produced a lower profits tax.

On August 28, 1943, plaintiff filed with the Treasury Department an application to have its profits tax determined under section 722 of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 722, note (1946 Ed.), 26 U.S.C.A. Excess Profits Taxes, § 722, page 175.

On August 21, 1947, the Commissioner of Internal Revenue, by 90-day letter, determined deficiencies in excess profits taxes for 1940 and 1941 in the respective amounts of $44,437.50 and $63,075.36, based on the equity invested capital method. The plaintiff filed a petition with the Tax Court, as provided by the statute, for a redetermination of these deficiencies. The only issue submitted to the Tax Court was the determination of the correct amount of equity invested capital

and the amount of excess profits tax liability based thereon, the taxpayer claiming that invested capital should be in excess of what the Commissioner had determined.

On June 26, 1947, plaintiff executed an agreement with the Commissioner in which it agreed that its constructive average base period net income was $344,687.70. This is necessary before the provisions of section 722 may be applied. The Excess Profits Tax Council, representing the Commissioner, approved this agreement on the same date. The Excess Profits Tax Council considered the case and after a study thereof made a determination granting the taxpayer relief pursuant to section 722, and on April 20, 1948, the Commissioner formally approved the allowance and the elimination of a portion of the tax theretofore asserted. The approval by the Commissioner on April 20, 1948, of the elimination of such excess as determined and computed by the council under section 722, resulted in fixing the amount of plaintiff's additional excess profits tax liability for 1940 and 1941, exclusive of interest, at $28,243.25 and $30,267.29, respectively, or a total of $58,510.54, if plaintiff computed its tax on the basis of the income method rather than the equity invested capital method. After this approval by the Commissioner he was not at liberty to assess and collect more than the $58,-510.54.

Inasmuch as plaintiff was entitled to use either the income method under section 722 or the equity invested capital method, whichever was most advantageous, in determining its excess profits tax credit, it continued its Tax Court proceeding because it knew, and so did the Commissioner, that if its position on the disputed items with respect to the equity invested capital method was sustained, it would owe no additional excess profits taxes for 1940 and 1941.

On January 31, 1949, the Tax Court, Reynolds Spring Company v. Commissioner of Internal Revenue, 12 T.C. 110, sustained the equity invested capital deficiencies which the Commissioner had determined in the 90-day notice in the amount of $44,437.50 for 1940 and $63,-075.36 for 1941, or a total of $107,512.-86, computed on the equity invested capital method. This decision was affirmed by the Circuit Court, 6 Cir., 181 F.2d 638, and certiorari was denied by the Supreme Court on October 9, 1950, 340 U.S. 821, 71 S.Ct. 53, 95 L.Ed. 603. If that had been all there was to the case the Tax Court decision would have become final on October 9, 1950. But here it was not.

Excess profits tax deficiencies, computed on the basis of plaintiff's constructive average base period net income, were assessed on December 8, 1950, in the principal amount of $58,510.54 ($28,243.-25 for 1940 and $30,267.29 for 1941). Interest, however, was assessed at the same time, computed on the previously proposed deficiencies based on the equity invested capital method on $107,512.86 ($44,437.50 for 1940 and $63,075.36 for 1941) from the due dates of the returns to December 8, 1950, on the theory of the date of the finality of the Tax Court's decision. But we think that under the facts of this case that was not all there was to the case.

On January 15, 1951, and January 23, 1951, plaintiff paid the deficiencies and interest, together with the additional interest because of some delay in payment, after notice and demand. Timely claims for refund were filed, rejected, and this suit followed.

The plaintiff originally contended that no interest was collectible by the Government on the $107,512.86 because this sum represented only potential deficiencies. However, after the decision in United States v. Koppers Company, Inc., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, plaintiff conceded that interest was due the Government on the $107,512.86 until April 20, 1948, the date the Commissioner approved the allowance by him of relief which had the effect of eliminating $49,002.32 of the $107,512.86.

The only issue remaining, therefore, in the instant case is whether the Government was entitled to assess and collect

interest on the deficiency of $107,512.86 after the Commissioner had approved, on April 20, 1948, the use of the constructive average base period net income for these years, which fixed the maximum additional excess profits tax liability for these years at $58,510.54.

The Internal Revenue Code does not expressly cover interest on "potential" deficiencies. Both parties rely on United States v. Koppers Company, supra. The plaintiff contends, and we think rightly, that the accrual of interest on the $107,-512.86 ceased on the date the Commissioner approved the plaintiff's right, as determined by the Tax Council, to use the agreed upon constructive average base period net income, because at that time the Government's right to assess and collect or retain any more excess profits taxes for 1940 and 1941 than would be due under the constructive average base period net income ($58,510.54) terminated or no longer existed. The defendant contends that interest was due on the $107,512.86 from the due dates of the returns to the date of assessment of the final deficiencies, and that the Supreme Court so held in the Koppers case supra.

The facts of the Koppers case and the instant case are in some respects very similar, but in others they are very different. In the Koppers case the taxpayer underpaid its excess profits taxes for the years 1940 and 1941, thus giving rise to excess profits tax deficiencies for those years. Applications for relief under section 722 were filed. The Excess Profits Tax Council approved the constructive average base period net income for those years, but there was no final determination. The Commissioner in the Koppers case assessed deficiencies for those years based on the constructive average base period net income rather than on the average base period net income. The Commissioner also assessed interest on the proposed deficiencies which were based on the average base period net income, computed from the due dates of the returns to the date of assessment of

the deficiencies based on the constructive average base period net income.

The question presented to the Court in the Koppers case was whether the relief granted under section 722, for interest purposes, related back to the due dates of the returns. The Supreme Court held that it did not. The underlying reason for the holding was that the Government was entitled to collect and use the money which was "abated" by the application of section 722 until that action was taken and that it was entitled to interest on the money for the period during which it was entitled to have its use.

The question in the instant case is, When did the abatement or elimination of the $49,002.32 of the $107,512.86 of the tax by law and procedure take place? We think it is clear, under the facts and the decision in the Koppers case, that the "abatement" or elimination of the unjust and discriminatory tax of $49,002.-32 took place when the Government's right to the use of the money abated ceased and it no longer had the right to demand or collect it. In the Koppers case the Commissioner did not approve the determination of the Excess Profits Tax Council until he assessed the deficiencies based upon that determination. Since the Commissioner had not approved the section 722 relief until that time, the Court held that the Government was entitled to interest on the amounts abated until that time because the full amount was still owing to the Government. In the instant case the Commissioner approved a constructive average base period net income for the years in question on April 20, 1948, and thereafter assessed the deficiencies based thereon on December 8, 1950.

We think the Government's right to the use of the money in excess of the $58,510.54 profits tax ceased on April 20, 1948, the date the Commissioner approved the use of the constructive average base period net income for the years 1940 and 1941, and fixed such tax in that amount, because the Government was as of that time no longer entitled to

assess, collect, or retain any more excess profits taxes for these years than were due under the approved constructive average base period net income method. The maximum additional excess profits taxes due the Government after April 20, 1948, was $58,510.54, and plaintiff concedes the Government properly collected interest on that amount until the date of its assessment.

The fact that plaintiff's additional excess profits tax liability would have been less, or even zero, if it had been sustained on its equity invested capital claim, is not significant in determining when the Government's right to collect and retain more than $58,510.54, plus interest, terminated.

The situation presented in this case arises only with respect to the years prior to January 1, 1942, because section 3771 (g)[1] deprives the taxpayer of interest on any overpayment for those years attributable to the application of section 722. For years after December 31, 1941, interest is allowed on overpayments attributable to section 722 relief from one year after the filing of the application for relief or September 16, 1945, whichever is the later. Therefore, for the years beginning after December 31, 1941, the issue presented in this case would not arise because interest would accrue on the overpayment during this period at the same rate as interest on the deficiencies.

The defendant says that had plaintiff paid the $107,512.86 for 1940 and 1941 when it made its returns plaintiff would have been deprived of the full $107,512.-86 until the overpayments attributable to section 722 were refunded without interest. Although this is true, we believe the Government has been recompensed for plaintiff's failure to pay the $107,-512.86 which was found by the Commissioner to be excessive and discriminatory, by the payment of interest at 6 percent on this sum during the time the Government was entitled to assess, collect, and retain this sum. Inasmuch as the statute does not expressly require the payment by the taxpayer of interest on this sum at all, we think that it would be an unreasonable and absurd interpretation of section 292(a)[2] to require, after the date of the Commissioner's determination, the payment of interest on the sum of $49,002.32 which the Commissioner found on April 20, 1948, was no longer due.

The plaintiff is entitled to recover and judgment will be entered to that effect.

---

1. Section 3771(g), 26 U.S.C. (1946 ed.):

"If any part of an overpayment for a taxable year beginning prior to January 1, 1942, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment. If any part of an overpayment for a taxable year beginning after December 31, 1941, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period prior to one year after the filing of such application, or September 16, 1945, whichever is the later. * * *"

2. Section 292(a), 26 U.S.C. (1946 ed.):

"Interest on deficiencies—(a) General rule.

"Interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax, at the rate of 6 per centum per annum from the date prescribed for the payment of the tax (or, if the tax is paid in installments, from the date prescribed for the payment of the first installment) to the date the deficiency is assessed, or, in the case of a waiver under section 272(d), to the thirtieth day after the filing of such waiver or to the date the deficiency is assessed whichever is the earlier. If any portion of the deficiency assessed is not to be collected by reason of a prior satisfaction, in whole or in part, of the tax, proper adjustment shall be made with respect to the interest on such portion."

The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.