**HARRY FERGUSON, Inc.,**
v.
**The UNITED STATES.**
**No. 120–52.**

United States Court of Claims.
Dec. 5, 1956.

Laurence A. Masselink, Detroit, Mich., Marion S. Harlan and Beaumont, Smith & Harris, Detroit, Mich., on the brief, for plaintiff.

William T. Kane, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, J. W. Hussey, Washington, D. C., and W. D. Kerr, Columbus, Ga., on the briefs, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This case comes before the court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.

Plaintiff seeks to recover interest alleged to have been erroneously collected for 1940, 1941, and 1942.

Plaintiff is a Delaware corporation, with its principal place of business at Detroit, Michigan. It was incorporated on May 16, 1939, under the name Ferguson-Sherman Manufacturing Corporation, but subsequently changed its name to Harry Ferguson, Inc., on April 15, 1942. Plaintiff began actual business operations on August 1, 1939.

Plaintiff filed its corporation income and excess profits tax returns for the calendar years 1940, 1941, and 1942, and paid the tax shown to be due thereon.

The returns, with excess profits tax credits based on average invested capital, claimed excess profits tax credits as follows:

1940 ..................$532,984.81
1941 ................ 536,599.42
1942 ................ 581,635.61

Applications for relief under § 722 of the Internal Revenue Code of 1939, 26 U. S.C.A., were thereafter filed claiming the following excess profits tax credits:

1940 ................$1,317,131.03
1941 ............... 1,606,961.94
1942 ............... 3,497,721.26

On August 12, 1942, the Internal Revenue Agent in Charge, Detroit, Michigan, forwarded to the plaintiff a report of an examining revenue agent showing overassessments in income tax and deficiencies in excess profits taxes for the years 1940 and 1941 in the following amounts:

Overassessments of Income Tax

1940 ...................$2,006.80
1941 ................... 41,079.50

Deficiencies in Excess Profits Taxes

1940 ................$124,717.16
1941 ................ 158,967.28

These adjustments were principally the result of the computation of plaintiff's excess profits tax credits for 1940 and 1941 on the basis of income rather than on invested capital as claimed on the returns and applications for relief under § 722.

On September 8, 1942, plaintiff filed a protest to the proposed adjustments made by the revenue agent's report of August 12, 1942. As a result of the protest a hearing was held by the Internal Revenue Agent in Charge. It was determined and agreed at the hearing that plaintiff was entitled to relief under § 722 for the years 1940 and 1941 and to excess profits tax credits of $801,569.04 for 1940 and $986,442.76 for 1941.

Plaintiff's income and excess profits taxes were recomputed on February 6, 1943, by the Internal Revenue Agent in Charge resulting in the following deficiencies and overassessments:

| Deficiencies | | |
|---|---|---|
| 1940 IT.............. | $ 2,006.80 | |
| 1940 EPT............ | 47,052.03 | |
| 1941 IT.....$93,868.40 | ........ | |
| 1941 EPT.. ......... | 254,626.84 | |
| | | |
| $93,868.40 | $330,685.67 | |

On February 11, 1943, plaintiff executed and delivered to the Internal Revenue

Agent in Charge an agreement, Form 874, waiving the restrictions on the assessment and collection of the deficiency in income tax for 1941 and accepting as correct the overassessments of excess profits taxes for 1940 and 1941.

On March 8, 1943, the Internal Revenue Agent in Charge wrote to plaintiff, saying in pertinent part:

"* * * Recomputation of excess profits tax liability reflecting the conclusions reached as a result of the conference, was furnished by you. Recomputation of income tax liability was furnished you under date of Feb. 6, 1943.

"Your accord to the tax liability, as adjusted, is evidenced by a signed agreement filed with this office.

"The item checked below explains briefly how settlement of the agreed tax liability will be accomplished through the office of the Collector of Internal Revenue for your district."

The item checked read as follows:

"* * * (√) Net overassessment: After the overassessment(s) have been certified to the Collector by the Commissioner of Internal Revenue, you will be advised as to how the overassessment(s) have been applied, and will receive a check for the amount due you."

Timely agreements between the plaintiff and the Commissioner had been executed extending the period of limitation upon assessment of income and excess profits taxes for the calendar years 1940, 1941, and 1942 to June 30, 1948.

In the latter part of 1945, plaintiff's 1940 to 1944 income and excess profits tax returns were audited by another revenue agent. A copy of the report of this agent was sent to the plaintiff by the Internal Revenue Agent in Charge on March 14, 1946. The report of the agent disallowed certain additions to bad debt reserves and as a result of such adjustments allowed excess profits tax credits after application of § 722 in the following amounts:

| | |
|---|---|
| 1940 | $729,558.74 |
| 1941–44 | 956,116.66 |

Plaintiff's tax liability was recomputed in such report as follows:

### Deficiencies

| | | |
|---|---|---|
| 1940 | IT | $ 21,800.64 |
| 1941 | IT | 10,128.61 |
| 1942 | IT | 129,257.01 |
| 1943 | IT | 138,238.99 |
| 1943 | EPT | 43,291.97 |
| 1944 | IT | 137,832.87 |
| 1944 | EPT | 574,884.94 |
| | | $1,055,435.03 |

### Overassessments

| | | |
|---|---|---|
| 1940 | EPT | $ 49,957.49 |
| 1941 | EPT | 199,895.85 |
| 1942 | EPT | 296,990.24 |
| | | $546,843.58 |

Prior to the agent's report, plaintiff had executed and delivered on December 31, 1945, a Form 874 waiving the restrictions on the assessment and collection of the deficiencies in the above amounts and also accepting as correct the overassessments of excess profits taxes.

On March 7, 1946, the plaintiff paid the Collector of Internal Revenue the sum of $602,459.85, this sum being the difference between the deficiencies and overassessments as determined in the revenue agent's report of January 16, 1946, and as set forth in plaintiff's waiver of December 31, 1945, plus the additional sum of $93,868.40, covered by plaintiff's waiver of February 11, 1943.

On February 28, 1947, plaintiff received notices demanding interest on excess profits taxes as follows:

| | |
|---|---|
| 1940 | $47,330.05 |
| 1941 | 45,771.27 |
| 1942 | 25,941.90 |

The above notices and demands pertained to the assessment of interest on excess profits taxes for the years 1940, 1941, and 1942, from the due date of the returns to January 30, 1946, which date was thirty days after the filing of the second waiver, Form 874. This interest was assessed and collected on deficiencies

in excess profits taxes of $161,831.09 for 1940, $196,894.70 for 1941, and $132,-265.30 for 1942. These deficiencies were computed by determining plaintiff's excess profits taxes without regard to § 722 and will hereafter be referred to as "potential" deficiencies in excess profits taxes since, due to the application of § 722, they were never actually assessed.

On March 10, 1949, plaintiff filed a claim for refund with the Commissioner of Internal Revenue. Separate amended claims for refund of the interest paid for each of the three years, 1940, 1941, and 1942, which are involved here, were thereafter filed on March 24, 1949. The complete grounds contained in plaintiff's claims and amended claims for refund were set forth as follows:

"The interest payment in question was based on an assessment computed on the hypothetical excess profits tax liability of the taxpayer had section 722 of the Code not been applicable. Interest should have been computed on the basis of taxpayer's actual excess profits tax for the particular year involved *after* the application of section 722."

Taxpayer relies on:

(1) Section 292(a) and (b) and 3771(g) of the Code.

(2) Seeley Tube and Box Company v. Manning, 3 Cir., 1948, 172 F. 2d 77, reversing 76 F.Supp. 937.

On May 4, 1950, plaintiff's claim for refund was denied by the Commissioner of Internal Revenue on the ground that during the period involved herein the plaintiff had the use of funds rightfully due the United States, i. e., excess profits taxes computed without regard to § 722.

It is plaintiff's position in his motion for summary judgment that the interest on deficiencies in excess profits taxes, computed without regard to § 722, terminated as to 1940 and 1941 thirty days after he signed the agreement, Form 874. As for the year 1942, plaintiff claims that he was entitled to use the credit computed by use of the previously determined constructive average base period net income in filing his return for that year.

The defendant, in its motion for summary judgment, relies on two propositions: (1) that plaintiff's original and amended claims for refund fail to state the ground upon which it now seeks to recover and is therefore barred from recovery and, (2) that the Government had the right to the use of the money represented by the "potential" deficiencies until such time as there was an elimination or abatement under § 722 and said abatement did not take place until the signing of the second waiver, Form 874, on December 31, 1945.

■ We are of the opinion that there is no merit to defendant's position as to the inadequacy of plaintiff's claims for refund filed with the Commissioner of Internal Revenue. At the time plaintiff's claims were filed, Treasury Regulation 111, Section 29.322–3, provided in part as follows:

"* * * The claim must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the basis thereof. * * *"

The claim, and amended claims, as hereinbefore set forth in this opinion, raised the issue as to the period for which the plaintiff would be required by law to pay interest on excess profits taxes. The Commissioner should have been able to make a determination, based on all of the facts contained in his files, as to the period for which interest would legally run against the plaintiff. It seems highly unlikely that he was unaware of the existence of the first agreement, Form 874. It is true, however, that the original claim, together with the amended ones, was couched in terms claiming a retroactive elimination or abatement of the excess profits taxes under § 722. Under this theory the filing of the Form 874 would not have affected the interest question in this case since all of the "potential" excess profits tax deficiencies would have been "abated" as

of the time plaintiff filed its returns. This question was decided adversely to the taxpayer in United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302. The claims for refund filed in this case, nevertheless, are, in our opinion sufficient to raise the lesser issue as to the correct time of an abatement under § 722 where an agreement, Form 874, has been filed.

As to the issue of the abatement or elimination of the excessive and discriminatory excess profits tax under § 722, both parties rely on the Koppers case, supra, and Consolidated Electronics Industries Corp. v. United States, Ct.Cl., 140 F.Supp. 405.

The Supreme Court held in the Koppers case that the relief granted by § 722 is an abatement of the tax effective currently when made. Interest runs on deficiencies in "potential" excess profits taxes, i. e., excess profits taxes computed without the application of § 722, from the due date of the return until such time as there is an abatement under § 722. In speaking of the time for which this interest on the potential deficiencies shall run, the Court quoted from a statement made by a Treasury Department reviewer in an affidavit in the record of the Premier Oil Co. case [Premier Oil Refining Co. of Texas v. U. S.], D.C., 107 F. Supp. 837, reversed 5 Cir., 209 F.2d 692, affirmed 348 U.S. 254, 75 S.Ct. 268, 276, 99 L.Ed. 302, as follows:

"'It is the policy of the Bureau of Internal Revenue in those cases where all or any part of a tax deficiency has been extinguished by application of the relief provisions of Section 722 of the Internal Revenue Code not to assess the extinguished portion of such deficiency. *However, interest has been computed and assessed on the extinguished portion of the deficiency* from the due date of the return to the thirtieth day after the agreement, Form 874, is filed or date of assessment, whichever is the earlier.' "

It seems to follow, that the correct interpretation of the above-quoted statement, which appears to have been adopted by the Supreme Court, is that the Bureau treated the filing of a Form 874 as a determination of the basic relief due a taxpayer as the result of applying § 722. It therefore must be treated as an elimination or abatement of the tax as that term is applied by the Supreme Court in the Koppers case.

In Consolidated Electronics, the question of when the elimination or abatement of the tax took place was directly before us. We held, under the particular set of facts in that case, that it took place upon the Commissioner's approval of the Excess Profits Tax Council's determination of a constructive average base period net income for the taxpayer. We did not hold that this was the only time that such an elimination of the tax could take place thereby stopping accumulations of interest on the "potential" deficiencies.

In the case now before us, the Internal Revenue Agent in Charge held a hearing on plaintiff's protest in connection with the computation of his excess profits taxes for the years 1940 and 1941. The Internal Revenue Agent in Charge, as a result of this hearing, determined that plaintiff was entitled to relief under § 722 and credits were computed pursuant to such determination. By use of these credits plaintiff's tax liability was redetermined, resulting in a deficiency in income tax for the year 1941 and overassessments of excess profits taxes for the years 1940 and 1941. Plaintiff was tendered an agreement, Form 874, waiving the restrictions on the assessment and collection of the income tax deficiency for 1941 and accepting as correct the overassessments of excess profits taxes for 1940 and 1941. He accepted and filed this agreement with the Internal Revenue Agent in Charge on February 11, 1943. We must assume that this agreement went through the normal administrative channels and was approved by the Commissioner or someone acting for him, since there is nothing in the record to show otherwise.

■ It is conceded, that at all times, there never was any question but that the excess profits tax was excessive and discriminatory to the plaintiff since it clearly fell within the provisions of § 722 (b) (4). The only question ever to be determined was the amount of relief under § 722 that would be allowed plaintiff. It therefore follows that when the Internal Revenue Agent in Charge computed in 1943 the allowable credits due plaintiff for 1940 and 1941, by applying § 722, the question of basic relief to be granted under the provisions of that section was determined. This amounted to a current elimination or "abatement" of the excessive and discriminatory tax for those years. It only remained that at some future time certain adjustments might have to be made, but the issue of entitlement and basis for the allowance of credits under § 722 was established. Some adjustments were in fact made in 1945, but they did not go to the question of the basic relief previously determined in 1943. The 1945 adjustments resulted from a later audit by a second revenue agent for all of the years 1940 to 1944. He disallowed certain additions to bad debt reserves in 1940 and 1941, but still gave plaintiff relief under § 722. The difference in the credits, under § 722 allowed by the agent in 1945 and that previously determined in 1943 amounted to only $72,010.30 for 1940 and $30,326.10 for 1941. Plaintiff agreed to the adjustments and filed another agreement, Form 874, covering all of the years 1940 to 1944. The Government contends that interest on the "potential" deficiencies runs until thirty days after the filing of this second agreement.

It seems absurd that more effect can be attached to this second agreement, with respect to the basic determination of plaintiff's relief under § 722, than to the first. To hold this would be to say that there is no way in which a taxpayer could have his tax liability determined and prevent the accumulations of interest. This would be manifestly against the intent and purpose of § 292(a)[1], allowing a taxpayer to file a waiver and end his liability for future interest.

We therefore hold that a current "abatement" of plaintiff's "potential" deficiencies in excess profits taxes for the years 1940 and 1941 under the provisions of § 722 took place at the time plaintiff filed the agreement, Form 874, on February 11, 1943. Under § 292(a) interest is computable only from the due date of the returns to thirty days after filing the above agreement, Form 874.

■ As to the year 1942, which also is in issue, plaintiff in filing his excess profits tax return for that year was entitled to use the credit previously determined for 1941.

Section 722(d) allows the Commissioner by regulation, where a constructive average base period net income has been previously determined for another taxable year, to waive the requirement that the tax must be computed and paid without regard to § 722. The purpose of this section was to allow an immediate abatement or elimination of the tax where it was already determined that the tax was excessive and discriminatory and the basic amount of relief under § 722 computed.

The regulations which the Commissioner prescribed are found in Sec. 35.-722–5(e) of Regulations 112. They provide that where a final determination of the constructive average base period net income has been made, and if, in the opinion of the Commissioner, no substan-

---

1. "§ 292. Interest on deficiencies

"(a) General rule. Interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax, at the rate of 6 per centum per annum from the date prescribed for the payment of the tax (or, if the tax is paid in installments, from the date prescribed for the payment of the first installment) to the date the deficiency is assessed, or, in the case of a waiver under section 272(d), to the thirtieth day after the filing of such waiver or to the date the deficiency is assessed whichever is the earlier."

tial information exists which would require a later redetermination, then the taxpayer may use the credit computed by use of such constructive average base period net income in filing his later returns.

The only authority for determining what is meant by final determination is found in Internal Revenue Bulletin, Mim. 5895; CB 1945, 276. It states that if taxpayer's claim for relief under § 722 is allowed in part, then the determination becomes final 90 days after statutory notice of disallowance, where no petition is filed in the Tax Court, or in the event a petition is filed, then upon the decision of the Tax Court becoming final. Also, where the relief claimed is allowed in full, the taxpayer will be notified to this effect and the determination will be final.

In this case there was no reason for either of these two methods to be used. An agreement had been reached as to 1940 and 1941 and plaintiff had accepted it by filing the Form 874. Plaintiff was notified by the Internal Revenue Agent in Charge that the agreement evidencing this was on file. There was nothing left to do insofar as determining the basic relief plaintiff was entitled to under § 722. We think that under the law and regulations plaintiff was entitled to the use of the previously determined credit in filing his excess profits tax return for 1942.

Inasmuch as both the 1943 and 1945 computations of credits allowable under § 722 resulted in overassessments of excess profits taxes for the years 1940 and 1941, plaintiff is entitled to a refund of all interest paid on the "potential" excess profits tax deficiencies for those years which was assessed and collected for any period subsequent to thirty days after the filing of the agreement, Form 874, on February 11, 1943. Plaintiff is also entitled to use the credit determined under § 722 for the year 1941, as adjusted by the 1945 agreement, in computing his excess profits tax liability on his return for the year 1942. This also resulted in an overassessment thereby entitling the plaintiff to a refund of all interest paid on the "potential" excess profits tax deficiencies for that year.

Plaintiff's motion for summary judgment is granted and defendant's motion is denied. Plaintiff is entitled to recover, together with interest as provided by law, and judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.