The RED RIVER LUMBER COMPANY
v.
The UNITED STATES.
No. 50060.

United States Court of Claims.
Decided March 6, 1956.

Dana C. Smith, Pasadena, Cal., for plaintiff. Melvin D. Wilson, Los Angeles, Cal., was on the briefs.

Ruppert Bingham, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff sues to recover Federal corporate income taxes paid for the calendar year 1945. The primary issue presented is the gain derived by plaintiff on the sale of certain property in 1945, which in turn involves a determination of the fair market value of certain property owned by plaintiff on March 1, 1913.

The plaintiff duly filed its income tax return for 1945 and paid the tax shown thereon. In this return plaintiff reported a long-term capital gain in the amount of $1,246,822.61, realized on the sale of certain assets to the Pacific Gas & Electric Company.

The Commissioner of Internal Revenue determined, assessed, and collected a deficiency for 1945 in the amount of $265,115.43, with $27,688.22 interest thereon. The deficiency was predicated on certain adjustments made by the Com-missioner reducing plaintiff's basis for the property sold, thereby increasing the gain on the sale to $2,321,822.61, and adjustments with respect to gain or loss on the sale of certain scrap, equipment, and used parts. A timely claim for refund was filed, rejected, and this suit followed.

The defendant now concedes that the Commissioner's adjustments with respect to the scrap, equipment, and used parts were erroneous and that plaintiff is entitled to recover the tax resulting from their correction.

In 1945 plaintiff sold certain property to the Pacific Gas & Electric Company for $2,524,000. The plaintiff's tax return, claim for refund, and amended claim for refund, stated that the selling price was $2,564,000, or $40,000 more. The plaintiff's petition alleged that the selling price was $2,524,000, and the record shows that this was the actual selling price.

The defendant contends that the actual selling price cannot be used in determining the amount of plaintiff's refund because plaintiff did not state in its claims for refund, as a ground for recovery, that the selling price reported on its tax return was erroneous. This contention is without merit. In order to determine the amount of plaintiff's re-covery on the ground presented to this court, the actual selling price must be ascertained. As we stated in Midvale Co. v. United States, Ct.Cl., 138 F.Supp. 269, it is settled that a taxpayer cannot recover in court on a ground different from that asserted in the claim for re-fund, unless there is some action of the Commissioner which amounts to a waiv-er or estoppel. When a ground set forth in the claim for a refund is sufficient to support recovery, the reason for this rule has been satisfied. The Commissioner has had his opportunity to consider the ground and dispose of the case adminis-tratively. If the Commissioner fails to allow the refund and the case comes to court, we see no reason why errors which do not affect the right of recovery, but

only the amount of recovery, should be perpetuated.

One of the grounds for recovery set forth in plaintiff's claims for refund was that the basis of the property sold to Pacific Gas & Electric Company was incorrectly reported by plaintiff and incorrectly determined by the Commissioner. If this ground is sufficient to support recovery, and we find that it is, the actual selling price must be used in determining the amount of gain on the sale.

The properties sold to Pacific Gas & Electric Company are described below.[1] The parties have agreed upon the basis of the properties sold except for the Hat Creek property and the Mountain Meadow Reservoir property.

The Hat Creek property was acquired by plaintiff in 1920. At that time, plaintiff and Mt. Shasta Power Corporation, a wholly-owned subsidiary of Pacific Gas & Electric Company, entered into an agreement whereby plaintiff agreed to convey to Mt. Shasta certain riparian lands and water rights on the Pit River and Fall River, and such easements and rights-of-way over other lands of plaintiff as Mt. Shasta selected within a 5-year period, and Mt. Shasta agreed to build and convey to plaintiff two hydroelectric power plants on Hat Creek, to be leased back by plaintiff to Mt. Shasta for a rental in perpetuity of 9,500 hp. of electrical energy. The effect of the transaction was that plaintiff transferred its Pit and Fall River rights and granted a 5-year right-of-way selection in exchange for the Hat Creek property, which was an agreement to provide plaintiff with 9,-500 hp. of electrical energy, free of charge, in perpetuity, secured by legal title to the power facilities.

The parties have agreed that this was a nontaxable exchange and that the basis of the Hat Creek property is the same as the basis of the Pit and Fall River rights and 5-year selection rights. The parties have also agreed that the basis of the Pit and Fall River rights and selection rights, for the purpose of determining gain on the 1945 sale, is their fair market value on March 1, 1913.

The plaintiff contends that the fair market value of the Pit and Fall River rights, as of March 1, 1913, was $1,800,-000 and the selection rights was $100,000 because of their value for hydroelectric power purposes. The defendant contends that the value of the Pit and Fall River rights was $90,000 and that the selection rights were valueless, because neither had any value for hydroelectric power purposes.

The plaintiff was engaged primarily in lumber and timber operations. By March 1, 1913, plaintiff had acquired over a half-million acres of timber properties in northern California, principally in Lassen and Shasta Counties. These properties included the Pit and Fall River lands and water rights. Prior to March 1, 1913, plaintiff was making plans for the development of its properties by the installation of sawmills, remanufacturing facilities, logging railroads, paper pulp manufacturing facilities, and various auxiliary activities.

The plaintiff started actual development of these properties in 1912 by the construction of plants in a town now known as Westwood. Arrangements were also made by plaintiff for the construction of a branch railroad to Westwood. The town had about 300 people in 1913 and about 7,000 by 1918. The railroad to Westwood was completed in 1914. The expanding need for electric power at Westwood, and the need for power in connection with its proposed development of its other properties in northern California, led to the develop-

---

1. The Hat Creek properties, including legal title to land, hydroelectric plants, water rights, and lease rights; certain other lands, easements, and water rights in Shasta County; certain portions of the lands, easements, water rights, and flume rights-of-way along Hamilton Branch in Plumas and Lassen Counties, California; the Mountain Meadow Reservoir property; certain electrical facilities consisting of transmission lines, telephone lines, substation, hydroelectric generating plant, and related structures.

ment of its hydroelectric resources at Westwood and influenced the development of hydroelectric power on the Pit and Fall Rivers during the decade following March 1, 1913.

On March 1, 1913, there was a steadily increasing market for hydroelectric power in northern California. There was an expected market in the immediate vicinity of plaintiff's land and the power could have been transmitted to San Francisco. Hydroelectric power was being transmitted such distances at that time. Also, the power companies carrying on development work in this area at that time would not have done so unless there was a potential market for the power.

On March 1, 1913, a promoter was attempting to assemble lands and water rights for the development of a large power project which would have required the use of plaintiff's lands and water rights. At that time most of the electric power utilities in northern California were projecting, planning, acquiring, and actually developing additional hydroelectric power sources.

In 1913 the Mt. Shasta Power Corporation and the Northern California Power Company were engaged in development work for the installation of power plants on the Big Bend of the Pit River approximately 25 miles west of Fall River Mills. These projects conflicted with each other and neither of them was as desirable for profitable operation as the potential development near Fall River Mills. Mt. Shasta Power Corporation, after obtaining permission to proceed with the Big Bend site, abandoned that site and made an arrangement to and did develop plaintiff's lands and water rights in combination with adjoining lands and water rights.

The plaintiff's Pit and Fall River lands and water rights were valuable on March 1, 1913, for hydroelectric power purposes. The plaintiff owned sufficient lands and water rights on these rivers to develop commercially practicable power plants. Thus Government permits for development, which were revocable,

would not have been required. There was a uniform large flow of water with a recorded minimum flow of about 1,450 second-feet at the lands owned by plaintiff. A large public utility development, using the lands and rights of plaintiff and others, could have been installed with a comparatively short tunnel across the bend made by the Fall and Pit River channels. No reservoir was needed to store water, thus reducing the cost of construction investment by about one-third. All rights here involved were riparian, and did not depend on appropriation or use. On March 1, 1913, these rights could have been, and were in 1920, combined with other adjoining ownerships on the Fall and Pit Rivers into the development of a large hydroelectric public utility.

The Railroad Commission of the State of California, in a proceeding to determine, *inter alia*, the cost of the Pit and Fall River rights to Mt. Shasta Power Corporation in 1920, found these rights had a value of $1,548,000 in 1920 and cost Mt. Shasta $1,439,168. After considering this value and the other values set forth in finding 25, including the opinions of the expert witnesses, we conclude that the Pit and Fall River rights had a fair market value on March 1, 1913, of $500,000. Accordingly, the basis of the Pit and Fall River rights transferred to Mt. Shasta Power Corporation in the 1920–1922 exchange was $500,000.

In the exchange agreement of 1920, plaintiff granted Mt. Shasta Power Corporation the right to require plaintiff to deed to it all easements and servitudes for rights-of-way which Mt. Shasta should reasonably require for the construction, maintenance, use, and operation of aqueducts, electric transmission and distribution lines, telephone lines, railroads, roads and trails over all of plaintiff's lands in Shasta County, for use in connection with the power plants to be constructed on the Pit and Fall Rivers and the power plants to be constructed on Hat Creek. The right of Mt. Shasta in these respects was limited

to such lands, easements, and servitudes as it might survey, select, and determine with a period of 5 years.

The testimony shows that these selection rights were of considerable value. The Railroad Commission of the State of California found they had a value of $139,000 in 1920. We find that they had a fair market value on March 1, 1913, of $90,000. Accordingly, the basis of the 5-year selection rights granted to Mt. Shasta Power Corporation in the 1920–1922 exchange was $90,000.

The Hat Creek property assumed the basis of the Pit and Fall River rights and 5-year selection rights under the 1920–1922 nontaxable exchange. Therefore, the basis of the Hat Creek property for purposes of determining gain on the 1945 sale was $590,000.

The parties have agreed that the basis of the part of the Mountain Meadow Reservoir property that was owned by plaintiff on March 1, 1913, is its fair market value on that date. This value is in dispute.

In 1921 the plaintiff completed construction of a hydroelectric power plant near the town of Westwood. In connection therewith, the Mountain Meadow Reservoir, comprising 6,728 acres of land and water rights, was constructed. Of this, 6,728 acres of land, 728 acres were purchased subsequent to March 1, 1913, and the basis of the 728 acres is not in dispute. The remaining 6,000 acres were adapted for agricultural, ranching, or reservoir purposes on March 1, 1913. In order to use the property for reservoir purposes it was necessary to purchase additional land for a dam site and an outlet.

During 1913, the Lake Almanor Reservoir was under construction immediately downstream from the plaintiff's property. The property for the Lake Almanor Reservoir was purchased in 1911 and 1912 for an average price of $31 per acre. The Lake Almanor Reservoir site was regarded as a far more superior site for reservoir purposes than plaintiff's site. The plaintiff's experts stated that the value of the 6,000 acres was about $50 per acre. The defendant's experts stated that the value was not in excess of $8 per acre. We find that the fair market value of the 6,000 acres on March 1, 1913, was $17 per acre, or a total of $102,000. The basis of the 6,000 acres of Mountain Meadow Reservoir for purposes of determining gain on the 1945 sale was $102,000.

The gain on plaintiff's 1945 sale to Pacific Gas & Electric Company should be computed as follows:

| Finding No. | | |
|---|---|---|
| 10. | Sale price | $2,524,000.00 |
| 10. | Expense of sale | 12,174.88 |
| | Net selling price | 2,511,825.12 |

*Basis of property*

| | | |
|---|---|---|
| 12(c). | Electric facilities | $161,967.18 |
| 12(b). | Shasta County property consisting of lands and rights along Hamilton Branch of the Feather River | 7,400.00 |
| 12(a). | Shasta County property consisting of lands and rights on Hat Creek | 7,000.00 |
| 31. | Hat Creek hydroelectric plants and related properties | 590,000.00 |
| 36. | Mt. Meadow Reservoir lands, later acquisitions | 7,345.52 |
| 41. | Mt. Meadow Reservoir lands, 3–1–13 ownership | 102,000.00 |
| | Total adjusted basis of property sold | 875,712.70 |
| | Net gain on sale | 1,636,112.42 |

The net gain on the sale was $1,636,-112.42.

The plaintiff is entitled to recover the taxes resulting from the determination that the gain on this sale was $1,636,-112.42, and the taxes resulting from the correction of the adjustments with respect to the scrap, equipment, and used parts, with interest as provided by law. Judgment will be entered accordingly.

The determination of the amount of recovery shall await the filing of a stipulation by the parties showing the amount due in accordance with the findings and the opinion of the court.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.