**UNION PACIFIC RAILROAD COMPANY**

v.

**The UNITED STATES.**

**No. 310-62.**

United States Court of Claims.

Jan. 19, 1968.

Robert J. Casey, New York City, attorney of record, for plaintiff. John A. Craig, Thomas E. Tyre and Clark, Carr & Ellis, New York City, of counsel.

Theodore D. Peyser, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

LARAMORE, Judge.

This is a suit for refund of Federal income and excess profits taxes and interest collected from the Union Pacific Railroad Company (hereinafter referred to as Union) for the calendar year 1942.

On June 15, 1943, taxpayer filed its final corporation income and declared value excess profits (DVEP) tax returns and a final corporation excess profits tax return for the tax year 1942.

Successive claims for refund were filed on October 4, 1946 (1946 claim), April 25, 1949 (1949 claim), April 10, 1950 (1950 claim), and September 11, 1953 (1953 claim). An audit by the Internal Revenue Service had begun in 1945. On July 16, 1946, Union received a substantial refund of DVEP and excess profits taxes. After the audit was completed, it received a refund of income and additional DVEP taxes and a credit for excess profits taxes on September 19, 1960.

Consent agreements extended the period for assessment of 1942 taxes until June 30, 1961. The Commissioner of Internal Revenue (hereinafter referred to as Commissioner) disallowed the 1949 and 1950 claims by a statutory notice dated September 26, 1960, and the 1953 claim by a notice of September 28, 1960. Union's post-audit, timely claim for refund of income and excess profits taxes and assessed interest, in a total amount of $13,409,961.46, was filed on December 28, 1961 (1961 claim) and disallowed on August 14, 1962. Suit for that amount was timely commenced. To date no action has been taken on the 1946 claim.

Union's petition, filed September 14, 1962, enumerates 27 distinct items as grounds for relief, 26 of which are the precise items presented in its 1961 refund claim. Four years later, after an additional audit, defendant filed its first and second amended answers, contesting all of the taxpayer's grounds for relief and raising 10 new affirmative defenses, *including lack of jurisdiction over Count XXVII.*[1] Plaintiff's motion to strike these defenses was denied by the trial commissioner and his order of September 29, 1966 permitted Union to amend its petition and raise affirmative issues as offsets to defendant's additional defenses. Union, by that amendment, raised

---

1. *Count XXVII*: Taxpayer claims a refund for $423,660.68 in excessive freight charges received from the government in 1942 and later refunded, which amount was not excluded from its 1942 income.

seven additional grounds for refund (Counts XXVIII–XXXIV).[2]

The government has moved for partial summary judgment asserting that neither these additional counts (except Count XXXI) nor Count XXVII of the original petition, were included in any timely claim for refund and that, therefore, they are both barred by the applicable statute of limitations.[3] Taxpayer has moved for partial summary judgment on the government's affirmative defenses, and contends that the court does not have jurisdiction because the period within which additional taxes might have been assessed expired on June 20, 1961 and, therefore, these additional defenses are barred.

## I

In opposition to defendant's motion, Union argues that the government is circumventing Court of Claims Rules 55(a) (1) and (3) (a trial commissioner's order, if not appealed, becomes the order of the court) by requesting this untimely review of the trial commissioner's 1966 order. Union states that defendant cannot now raise the dispositive motion for partial summary judgment pursuant to Rule 64, because the defendant did not appeal the 1966 procedural order granting plaintiff permission to amend its petition. The amendment had been allowed as a motion pursuant to Court of Claims Rule 22(a) (leave to amend within the discretion of the court). We cannot agree.

■■ A procedural motion which requests leave to amend a petition out-of-time (Rules 54(a) (3) and 22), when granted by the trial commissioner, is subject to review by the court if requested within seven days after notice of the order is served (Rule 55(a) (3)). Absent that request, the order is deemed the order of the court. Dispositive motions (including a motion for partial summary judgment based upon lack of jurisdiction), however, are specifically excepted from the scope of Rules 54(a) and 55(a) and included in Rules 54(b) and 55(b). Clearly, Union's procedural motion to amend its petition cannot negate defendant's indisputable right to move, at any time, for summary judgment if it becomes evident that a claim is barred by the statute of limitations. See 6 Moore's Federal Practice (2d Ed. 1965), ¶ 56.14; and 3 Barron and Holtzoff, Federal Practice and Procedure, § 1245, and the cases cited therein.

■■ As an alternative to its 1966 motion to strike defendant's additional defenses, which was denied, plaintiff re-

2. *Count XXVIII*: Subsidiary net losses ($2,682,553.38) for the years 1930 through 1941 were erroneously deducted from accumulated earnings and profits for excess profits tax calculations.

*Count XXIX*: The money and property paid in for stock account ($28,662,-393.68) was not increased by the difference between the fair market value of common stock (994,500 shares) issued during the period 1900 through 1907 on the conversion of four percent bonds and the par value of the stock.

*Count XXX*: The money and property paid in for stock account ($19,403,421) was not increased by the difference between the fair market value of common stock (268,153 shares) issued during the period 1908 through 1914 on the conversion of four percent bonds and the par value of the stock.

*County XXXI*: (Defendant has not challenged this claim.) Plaintiff pre-

sents a position contingent upon the court's acceptance of one of defendant's additional defenses.

*Count XXXII*: Accumulated earnings and profits were erroneously reduced by the 1921 through 1941 capital asset expenditure ($700,000) deducted under the Minimum Rule of the Interstate Commerce Uniform System of Accounts as an ordinary expense.

*Count XXXIII*: A reasonable depreciation for the year 1942 was not allowed with respect to the items indicated in Count XXXII acquired during the period 1921 through 1941 and which had not been disposed of prior to January 1, 1942.

*Count XXXIV*: The gain ($23,286,-091.31) realized on the sale of certain lands during the period 1898 through 1919 should increase accumulated earnings and profits.

3. Sec. 7422(a), Int.Rev.Code of 1954; Sec. 322(b) (3), Int.Rev.Code of 1939.

quested permission to assert the grounds now challenged by the government, notwithstanding the fact that they may not have been the subject of a timely refund claim. The question of a timely-filed claim, however, was not decided by the trial commissioner's exercise of his discretionary power to permit an untimely amendment to the petition. We find the defendant's motion for partial summary judgment on Counts XXVII through XXX and XXXII through XXXIV procedurally correct.

## II

Union's basic position in opposition to the merits of defendant's motion is that its original and amended claims for refund, in conjunction with the extensive and detailed Internal Revenue Service Agent's audit investigation and the knowledge thereby acquired by the Service, are an adequate foundation for raising Counts XXVII–XXXIV in this suit. Because the agent was aware of, and considered the facts underlying these counts, it argues that the Commissioner knew, or should have known, that taxpayer claimed a refund on these items.

Defendant's motion is based on its conclusion that the timely-filed claims for refund fail to state the grounds upon which plaintiff now seeks to recover. The taxpayer did not apprise the Commissioner of the grounds now asserted, either in a formal or an informal claim for refund, and, therefore, defendant reasons, taxpayer is barred from recovery.

█ It is an undisputed general rule that a ground for refund neither specifically raised by, nor comprised within the general language of, a timely formal or informal application for refund to the Internal Revenue Service cannot be considered by a court in which a suit for refund is subsequently initiated. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 17–18, 60 S.Ct. 371, 84 L.Ed. 542 (1940); International Curtis Marine Turbine Co. v. United States, 56 F.2d 708, 74 Ct.Cl.

132 (1932); Midvale Co. v. United States, 138 F.Supp. 269, 133 Ct.Cl. 881 (1956); Williamson v. United States, 292 F.2d 524, 155 Ct.Cl. 279 (1961). The rule that a taxpayer cannot present one ground for refund in its claim and a different ground in its petition is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933). In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend. Carmack v. Scofield, 201 F.2d 360, 362 (5th Cir. 1953); Thompson v. United States, 332 F.2d 657, 660 (5th Cir. 1964); Tucker v. Alexander, 15 F.2d 356 (8th Cir. 1926), reversed on other grounds, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927).

█ If the claim for refund states only general grounds for relief, an item raised in litigation but not specifically adverted to in the claim might be permitted if it is found that the taxpayer adequately alerted the Service to the fact that the item is a ground for refund, or that the Commissioner considered that unspecified ground in reaching his decision on the items for which a refund was requested. United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941); Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L. Ed. 1018 (1931); Cumberland Portland Cement Co. v. United States, 104 F.Supp. 1010, 122 Ct.Cl. 580 (1952); Stuart v. United States, 130 F.Supp. 386, 131 Ct. Cl. 174 (1955).

█ We have permitted a technically imperfect claim to be remedied by an amendment after the limitations period has expired if the Commissioner was neither misled nor deceived by the absence of a formal claim. Several of the deci-

sions relied upon by taxpayer in support of its statement that formalistic or technical requirements are not applied to refund claims involved the sufficiency of a claim for refund based on a net operating loss deduction and the carryback or carryforward to, or from, another year. An amendment after the statutory period, or recovery on an item not specified in a claim, has been permitted if the Service had notice of the ground involved. See National Forge & Ordnance Co. v. United States, 151 F.Supp. 937, 139 Ct.Cl. 204, 222 (1957); Continental Foundry & Machine Co. v. United States, 159 F.Supp. 608, 141 Ct.Cl. 604 (1958); United States Pipe & Foundry Co. v. United States, 155 F.Supp. 231, 140 Ct.Cl. 132 (1957); Landers, Frary & Clark v. United States, 149 F.Supp. 202, 137 Ct.Cl. 870 (1957); Harlan v. United States, 312 F.2d 402, 160 Ct.Cl. 209 (1963).

In each of these decisions the taxpayer made a specific reference in its claim to the net operating loss or carryback problem. We found that because the Commissioner had been given adequate notice of the carryback computation issue, and must necessarily have considered subsidiary issues which were an integral part of the issue presented by the claim, a subsequent and otherwise untimely amendment stating a specific subsidiary question was appropriate.

In National Forge & Ordnance Co. v. United States, supra, Continental Foundry & Machine Co. v. United States, supra, and H. B. Zachry Co. v. United States, 168 F.Supp. 777, 144 Ct.Cl. 124 (1958), we found that the claims for refund had directed the Commissioner's attention to the particular method of correctly computing a net operating loss carryback to the year in litigation. In those cases we found a sufficient foundation for the ground asserted because taxpayers' change of their theories to accord with the post-filing date Supreme Court decision in United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 (1955) did not prejudice the government. The decisions in Landers, Frary & Clark v. United States, supra, and Harry Ferguson, Inc. v. United States, 146 F.Supp. 836, 137 Ct. Cl. 137 (1956) involved a similar net operating loss carryback problem and in each case the claim stated that the refund was based on the computation required by the net operating loss provisions.

In Newton v. United States, 163 F. Supp. 614, 143 Ct.Cl. 293 (1958), also relied on by Union, the taxpayer while litigating the deductibility of alimony payments for the year 1944, consented to the assessment of deficiencies based on comparable alimony payments for the years 1945 and 1946 but only after having made informal protests. The litigation terminated in plaintiff's favor in 1953 but the Commissioner denied the 1953 claims for refund for the tax years 1945 and 1946 as untimely filed. We found that a valid informal claim had been made. The presence of a specific written informal claim was the predicate for our conclusion that the Service had adequate timely notice of an intent to seek a refund on the alimony deduction issue. Union has not proved that it either made a comparable informal claim or gave equivalent notice.

In United States Pipe & Foundry Co. v. United States, supra, the fact that the Commissioner in his determination applied the carryback provisions in a manner other than that specified in the claim did not affect the taxpayer's right to recover.

In deciding Midvale Co. v. United States, supra, we held the reference in taxpayer's claim to repayments under the Vinson Act sufficiently specific to permit recovery for excess profits taxes based on such repayments. The Commissioner recomputed these payments on a completed contract method rejecting plaintiff's percentage of completion computation. The item (Vinson Act repayments), the ground for relief, and the method of computation, were specified in the claim.

Similarly, the taxpayer's claim in Standard Lime and Cement v. United States, 329 F.2d 939, 165 Ct.Cl. 180 (1964), asserted the percentage depletion allowance computation as a ground for re-

fund. A later election, by filing a new return, to recompute the allowance by a method different from that originally employed was permitted and we awarded a recovery based on the new computation. The Commissioner had been given timely notice of the ground for relief, i. e., the depletion allowance computation.

■ Union's claims for refund, in contrast, do not contain a sufficiently specific reference so as to justify a conclusion that the Commissioner had notification that it claimed a refund on these grounds. We, therefore, find that the claims for refund, which necessitated a 44-year recomputation of taxpayer's earnings and profits, did not adequately notify the Service of an intent to claim a refund on these grounds.

Our examination of the claims reveals no appropriate reference to these new grounds. The 1946 claim requested a refund of deficiency interest assessed and paid. The 1947 claim requested specific additions to invested capital and accumulated earnings and profits, none of which involves the grounds now asserted. The 1949, 1951 and 1953 claims demanded deductions for U. S. Government freight charges received in 1942 and refunded in subsequent years. The 1949 claim includes a request for a vacation pay accrual deduction. None of these items are sufficient to permit us to conclude that the Service had adequate notice of any intent to claim a refund on the bases stated in Union's new counts. Nor will the 1961 claim permit that finding. The 15 specific and precise items, which it is alleged were erroneously treated in the recomputation of taxpayer's excess profits tax credit based on invested capital, as enumerated in the 1961 claim, do not encompass the grounds for relief relating to excess profits taxes raised by the amended petition or that ground raised in Count XXVII. Taxpayer challenged each of the 26 disputed items first in its 1961 claim and again in the petition with admirable exactitude, but we cannot find that the Service, thereby, was apprised of its intent to claim a refund on grounds other than those referred to in

the claim. We find, therefore, that the Service was not given adequate notice of taxpayer's intention to assert a refund on these grounds by the claims for refund.

Union's broader contention is that the auditing agent, during his investigation of the claims, necessarily considered the facts which underlie these additional grounds, found them favorable to taxpayer, and by his inaction, rejected them. If we find that the agent could not have made the determination indicated by his report without evaluating the issues involved in these contested counts, and that therefore he was in fact on notice that taxpayer intended to claim a refund on these grounds, we would embrace the problem of whether notice to an auditing agent, acquired by his own activities, is sufficient compliance with the requirements of section 7422 of the Internal Revenue Code of 1954. Because we find that the agent did not have the required notice, we do not reach this latter problem.

■ We conclude that the auditing report does not establish that as an integral part of his audit the agent necessarily evaluated the facts underlying this claim. Therefore, he did not have notice of taxpayer's unexpressed intention to claim a refund.

Union, in reponse to a request by the court during oral argument on October 2, 1967, submitted to the court specific page references in the audit report which, it contends, establishes the agent's awareness of Counts XXVIII, XXIX and XXX and, therefore, notice to him of its intention to claim a refund. Our examination of these documents leads us to the opposite conclusion.

■ A taxpayer might obtain a recovery in his refund suit on a ground other than that specified in his claim if he can establish adequate notification to the Internal Revenue Service of an intention to claim a refund on that ground. Mere availability of the facts underlying a claim, however, is not enough to find that an intention to claim a refund has been communicated. In American Radia-

tor & Standard Sanitary Corp. v. United States, 318 F.2d 915, 162 Ct.Cl. 106 (1963), we said:

It is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; * * *. [318 F.2d at 920, 162 Ct.Cl. at 114]

The Supreme Court, in Angelus Milling Co. v. Commissioner of Internal Revenue, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945), discussing a comparable problem, stated:

It is not enough that in some round-about way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made * * *. [at 297–298, 65 S.Ct. at 1165]

* * * [I]t is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund. [at 299, 65 S.Ct. at 1165]

■ Neither the Commissioner nor his agents can be expected to ferret out any possible grounds for relief which a taxpayer might assert. Availability of information is not equivalent to notice that a claim is asserted based on that information. That claim must somehow be communicated to the Service.

In Electric Power and Light Corp. v. United States, 1 F.Supp. 773, 76 Ct.Cl. 379 (1932), a refund claim incorporated information in an agent's report which had recommended a refund. We held the claim insufficient to support a ground for relief raised in litigation but not found in the agent's report and said:

The fact that the revenue agent's report may have embraced statements with reference to the item * * *, which constituted the facts with reference to the nature of that item, which statements were made by the agent in connection with his audit of the case and the elimination of the item from

consolidated net income, is not, in itself, sufficient. [at 389, 1 F.Supp. at 777]

We find that the statements and references in the agent's report on Union do not justify our concluding that he had notice of the items which are the subject of defendant's motion.

■ Count XXIX alleges that the Commissioner of Internal Revenue failed to increase a paid-in surplus account by the excess of the fair market value over par value of common stock issued on the conversion of certain bonds during the years 1901–1907. Similarly, Count XXX alleges that no increase in a paid-in surplus account was allowed for the excess of fair market value over par value on the conversion of certain other bonds during the period 1908–1914. Taxpayer argues that the agent's reduction of that same surplus account based on a June 26, 1897 reorganization transaction indicates that he obviously considered the fair market value of the stock at the bond conversions. We do not agree. The transactions are distinct and involve different problems in different tax years. There is no indication, nor can we infer, that the agent had considered the fair market value of the stock at the time when the bonds were converted. References by Union to the agent's consideration of commission and revenue stamp expenses when the stock was issued are inconclusive.

■ Count XXVIII alleges that Union's accumulated earnings and profits were not increased by an amount representing subsidiary corporation losses assumed and reimbursed by plaintiff during the years 1931–1941. References in the report to an income and profit and loss statement, one item of which was labelled "Separately operated properties —Loss," is the basis for taxpayer's allegation that the agent had adequate knowledge. No change in that account was made for any of the years involved. We find that the mere presence of an item on taxpayer's profit and loss statement is insufficient proof of the required notice. We are perplexed by plaintiff's

statement that the audit report clearly reveals the agent's erroneous treatment of these items in view of the fact that Union's 1961 post-audit claim does not request a refund on the basis of these allegedly obvious errors.

Counts XXXII and XXXIII present purported alternative claims to Count II of the original petition. That count requests an ordinary and necessary expense deduction under the Interstate Commerce Commission's Minimum Rule for the cost of miscellaneous items acquired in 1942. The alternative counts request a recomputation of accumulated earnings and profits, if these deducted items are held to be capital assets, as is urged by the government. The requested computation, however, is for the acquisitions in the years 1921 through 1941 (Count XXXII). In addition, Count XXXIII claims a right to capitalize those items acquired prior to and not disposed of before 1942 and to deduct an appropriate amount of depreciation.

■ A request for refund for a particular year does not constitute a claim for any other year. Rosengarten v. United States, 181 F.Supp. 275, 149 Ct.Cl. 287 (1960), cert. denied, 364 U.S. 822, 81 S. Ct. 60, 5 L.Ed.2d 53. The 1961 claim requested only the ordinary expense deduction for 1942. The alternative position to which Union adverts would be that the items acquired in 1942 are subject to capital asset treatment. We find that the recomputation and depreciation deduction requested in Counts XXXII and XXXIII are not supported by a timely claim for refund.

■ Count XXXIV claims entitlement to an increase in accumulated earnings and profits by an amount received on the disposition, during the period 1898–1919, of lands acquired by Union in its 1897 reorganization. Taxpayer admits that it erred by crediting these receipts to its Investment in Road Equipment account but not making a corresponding entry in accumulated earnings and profits. We have not been referred by taxpayer to any basis either in a claim or in the audit report from which we

might deduce that the Service had notice of this ground. The 1961 and 1946 specific claim references to equity invested capital are insufficient.

Count XXVII is a variation of the same problem. By its 1949, 1951 and 1953 claims, Union, during the audit investigation, claimed that excessive freight charges received from the government in 1942 and refunded in later years were excludible from its income. The amount claimed was allowed in full by the Service and not challenged by Union either in the post-audit 1961 claim or during the administrative determination and review of its liability. Union first raised a claim for an additional amount, based on the same item, in its original 1962 petition. The petition requests a judgment for $13,409,961.46, the exact amount of its 1961 claim which did not include the ground asserted in Count XXVII. Presumedly, plaintiff did not recalculate its total refund claim when preparing its petition.

■ Whether asserted as a new claim or as an amendment to a prior claim, an additional ground for relief presented to the Internal Revenue Service prior both to the expiration of the statutory period and to any action by the Commissioner, would present no difficulties. After the expiration of the limitations period, but prior to any action by the Service on a timely-filed claim, an amendment asserting grounds relating thereto is generally permitted. If, after a claim is rejected and suit has begun, an amendment asserts grounds which neither alter the grounds in the rejected but timely-filed claim nor affect the right of recovery, a court might permit a judgment in an amount other than that stated in the original claim. See Red River Lumber Co. v. United States, 139 F.Supp. 148, 134 Ct.Cl. 444 (1956). If the government initiates litigation to recover an allegedly erroneous refund, a taxpayer-defendant should not be precluded from asserting that the amount of its claim was understated in his attempt to establish an overpayment for which he was entitled to a

refund. See United States v. Gates, 35 F.R.D. 524 (D.C.Colo.1964).

 The disposition of a taxpayer's refund claim by allowance of the amount requested in full, however, precludes an amendment asserting an additional amount after the expiration of the statutory period for refund. This amendment is effectively a new claim barred by the provisions of section 6511(a) of the Internal Revenue Code of 1954. Count XXVII, therefore, is a new claim and not an amendment founded upon a timely claim.

 We conclude that the defendant's motion for partial summary judgment was procedurally correct and is granted insofar as Counts XXVII–XXX and XXXII–XXXIV request a refund.

### III

In the alternative, taxpayer argues that it should be permitted to raise these counts to offset defendant's additional defenses. The government, relying on G.C.M. 9800, X–2 Cum.Bull. 271 (all items of income whether they increase or decrease the tax are considered in the Commissioner's computation of an overpayment) has requested that the court retain jurisdiction over these questions for the sole purpose of determining whether there has been an overpayment of tax for 1942.

We hold that Union may raise the issues in the disputed counts for the sole purpose of offsetting defendant's setoffs. The taxpayer, however, may recover only an amount which would reduce defendant's offsets to zero. If defendant fails to obtain any favorable determination on its offset issues, plaintiff could not reduce its tax liability by recovery on its offset issue.

 The memorandum (G.C.M. 9800), exclusively relied on by the government, is not authority for the proposition that a taxpayer has a right to raise items otherwise barred by the statutory period as offsets to the government's offsets. We, however, reached the result now requested by both parties by a different route.

The government's right to assert setoffs against the same taxpayer for the same year in which a refund is requested, is part of its basic defense of lack of an overpayment. This is premised on the unquestioned principle that a taxpayer cannot receive a refund unless he can prove that there is an overpayment. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Missouri Pacific R. R. Co. v. United States, 338 F.2d 668, 168 Ct.Cl. 86 (1964); Reuben H. Donnelley Corp. v. United States, 257 F. Supp. 747 (D.C.S.D.N.Y.1966).

As we said in Dysart v. United States, 340 F.2d 624, 169 Ct.Cl. 276 (1965):

> We believe that both the government and the individual taxpayer have the legal right to raise a setoff * * *. [340 F.2d at 627–628, 169 Ct.Cl. at 281]
>
> * * * It is not enough that he [taxpayer] can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax. * * * His entire tax liability under the particular tax return is therefore open for redetermination. [340 F.2d at 628, 169 Ct.Cl. at 282]

 The taxpayer is attempting to prove overpayment while the government asserts setoffs to prove the absence of an overpayment. We can find no reason to permit the government to raise items for which the statute of limitations prevents assessment of a deficiency and deny the taxpayer the corollary right to assert items in offset to the government's new issues. We note, however, that if the government does not raise an offset issue in its defense of lack of overpayment, a taxpayer could not raise any setoff. The government's offset issues do not raise the bar of the statute of limitations either for the government or the taxpayer. We, therefore, will permit plaintiff to raise these issues for the limited purpose of offsetting defendant's offset issues.

### IV

 Union has moved for partial summary judgment on defendant's addi-

tional defenses based on lack of jurisdiction because the consented-to period for an assessment expired on June 20, 1961. Our discussion of the government's basic right to assert offsets to prove that there has been no overpayment is applicable and is sufficient reason to deny the motion. In addition, Union, as an alternative to its motion to amend its petition before the trial commissioner, moved to strike defendant's defenses as insufficient and asserted the same jurisdictional issue. That motion to strike was denied by the trial commissioner and when not appealed became the order of this court. The precise issue has been determined and there is no reason to consider it a second time.

Upon consideration of the briefs and oral argument presented, and for the reasons stated, we grant defendant's motion for partial summary judgment to the extent that Counts XXVII through XXX and XXXII through XXXIV claim a refund. The counts are dismissed except for the limited purpose of offsetting defendant's offset issues. Union's motion for a partial summary judgment is denied. The case is remanded to the trial commissioner for further proceedings.