Edward & Andrea P. **BREGSTONE**

v.

The **UNITED STATES.**

No. 15–83T.

United States Claims Court.

Sept. 16, 1985.

Mark F. Werblood, Arlington, Va., for plaintiffs.

Mary M. Abate, Washington, D.C., with whom were Asst. Atty. Gen. Glenn L. Archer, Jr., Mildred L. Seidman and Gerald B. Leedom, Washington, D.C., for defendant.

## OPINION

WHITE, Senior Judge.

The plaintiffs, Edward and Andrea P. Bregstone, filed this action to obtain a refund of $3,575.16 (plus statutory interest) in connection with their income tax payments for the calendar year 1976.

A $546.16 item that was originally involved in the action was disposed of by the court adversely to the plaintiffs in an unpublished decision dated October 27, 1983, granting a motion for partial summary judgment previously filed by the defendant.

After a substantial delay, occasioned by the parties' efforts—ultimately unsuccess-ful—to agree on a settlement of the case, a trial on the merits was held and post-trial briefs were filed by the parties. The final reply brief was filed on August 15, 1985.

The trial involved three separate aspects of the plaintiffs' claim that remained in the case after the allowance of the defendant's motion for partial summary judgment concerning the $546.16 item previously mentioned.

### The Rental House

One of the remaining claim items relates to certain expenditures made by the plaintiffs, and also depreciation, in connection with a house which the plaintiffs owned and held for rental purposes in 1976. The plaintiffs claimed these expenditures and the depreciation as deductions on their income tax return for 1976, but the deductions were disallowed by the Internal Revenue Service.

During the course of the trial, defendant's counsel, on the record, conceded that the expenditures and the depreciation with respect to the rental house were properly deductible for income tax purposes.

Accordingly, the plaintiffs are entitled to recover on this aspect of their claim.

### The CAP

Plaintiff Edward Bregstone was an active member of the Civil Air Patrol (CAP) in 1976. The plaintiffs contend that they are entitled to an income tax refund for 1976 on the basis of what the plaintiffs refer to as a charitable contribution to the CAP.

In support of this aspect of the plaintiffs' claim, Mr. Bregstone testified at the trial concerning the following expenditures incurred during 1976 in connection with his CAP activities:

(1) Mr. Bregstone attended 48 meetings of the CAP in 1976, and paid dues in the amount of $2 at each meeting, or a total of $96;

(2) attendance at each CAP meeting required Mr. Bregstone to make a 76-mile round trip between his home in Alexandria,

Virginia, and Manassas, Virginia, where the meetings were held, at a cost of $0.07 per mile for transportation by automobile, or $5.32 per round trip, so that Mr. Bregstone's transportation costs for the 48 round trips totaled $255.36; and

(3) Mr. Bregstone purchased a pair of shoes for $12 to be used as part of his CAP uniform.

The accuracy of these expenditures, amounting to $363.36, is accepted in the absence of any conflicting evidence presented by the defendant.

Charitable contributions made within a taxable year are permitted by 26 U.S.C. § 170(a) (1982). The term "charitable contribution" is defined in section 170(c) as "a contribution or gift to or for the use of" various types of organizations that are specified in section 170(c). The defendant does not dispute the plaintiffs' premise that the CAP qualifies as a proper recipient of charitable contributions.

In this connection, although Treas. Reg. § 1.170A–1(g) (as amended 1/6/75) provides that "[n]o deduction is allowable under section 170 for a contribution of services," the regulation then states as follows:
* * * However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible.
* * *

■ It appears that the dues which Mr. Bregstone paid for attendance at CAP meetings, the transportation costs which he incurred in attending such meetings, and the cost incurred in purchasing a part of his CAP uniform were all expenditures directly related to CAP activities. Hence, such expenditures were made "incident to the rendition of services" by Mr. Bregstone to the CAP, and they were properly deductible for income tax purposes under 26

U.S.C. § 170 and Treas. Reg. § 1.170A–1(g).

Although Mr. Bregstone, in testifying concerning these expenditures, did not expressly deny having received any reimbursement for them, there is nothing in the record to suggest that he was reimbursed for them. Actually, the evidence as a whole warrants the inference, and the court finds, that these expenditures were unreimbursed.

It necessarily follows, therefore, that the plaintiffs are entitled to recover on this aspect of their claim.

### The Aircraft

The final matter to be disposed of involves 1976 expenditures totaling $4,348 which Mr. Bregstone made in connection with an aircraft (a four-seater, single-engine, low-wing monoplane) owned by him. The question before the court is whether these expenses were properly deductible for income tax purposes.

With respect to this particular aspect of the plaintiffs' claim, it is pertinent to note at the outset that, under 26 U.S.C. § 7422(a) (1982), "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, * * * until a claim for refund or credit has been duly filed with the Secretary [of the Treasury] or his delegate [the Internal Revenue Service] * * *."

In the present case, the claim which the plaintiffs filed with the Internal Revenue Service requested a refund in connection with the 1976 aircraft expenses.

However, the statutory provision previously mentioned is augmented by Treas. Reg. § 301.6402–2(b)(1) (1955), which declares that a claim for a tax refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner [of Internal Revenue] of the exact basis thereof."

Consequently, courts have held that, in an action for a tax refund, the taxpayer is not permitted to set out grounds for the refund that vary substantially from the grounds which the taxpayer asserted in the claim for refund that was filed with the Internal Revenue Service. *Ottowa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed.Cir.1983); *Cook v. United States*, 220 Ct.Cl. 76, 86–87, 599 F.2d 400, 406 (1979).

The Federal Circuit, in the *Ottowa Silica* case, stated the rule as being to the effect that "a ground for a refund that is neither specifically raised by a timely claim [to the Internal Revenue Service] for a refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund," and that "[a] taxpayer must specify the grounds and the factual bases from which they arise in its claim for a refund if it wishes to litigate on those grounds" (699 F.2d at 1138).

An important reason for this rule is that it permits the Internal Revenue Service to correct any errors it may have made, and thus limits any subsequent litigation to those grounds which the IRS has already had an opportunity to consider and is willing to defend. *Union Pacific Railroad Co. v. United States*, 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968).

In the present case, the claim which the plaintiffs submitted to the Internal Revenue Service was sketchy concerning the factual basis on which a refund was sought in connection with the aircraft expenses. The aircraft expenses and the rental house expenses (previously discussed in this opinion) were treated together in the claim under a "Statement of *rental income and expenses* (in lieu of schedule E and form 4831)" [emphasis supplied]. In this statement, the rental house was referred to as "Property A" and the aircraft was referred to as "Property B: Aircraft; Maryland Airport, Indian Head, Maryland (*first lease payments* not due during CY 1976)" [emphasis supplied].

For Property B (the aircraft), the 1976 expenses were shown as follows:

| | |
|---|---:|
| Auto & Travel | $ 87 |
| Insurance | 403 |
| Repairs & Maintenance | 2,674 |
| Misc[ellaneous] | 282 |
| [Subtotal] | 3,446 |
| Depreciation | 892 |
| Exp[enses] & dep[reciation] | 4,348 [sic] |
| Net loss from rents | $7,734 |

The "Net loss from rents" obviously consisted of the total expenses and depreciation set out in the statement for Property A, the rental house ($2,386), and for Property B, the aircraft ($4,348).

Thus, the only ground stated, or even implied, in the claim submitted by the plaintiffs to the Internal Revenue Service with respect to the deductibility of the aircraft expenses was that they were expenses incurred in connection with the use of the aircraft for rental purposes.

During the course of his testimony at the trial, Mr. Bregstone provided a substantial amount of information regarding the purposes for which his aircraft was used in 1976. For example, he testified that he was—and still is—employed by the U.S. Coast Guard as an electronics engineer in the Navigation Systems Branch, where his primary work has involved the development of the Loran C Navigation System. He sometimes would take his Loran C set with him on his aircraft and subject it to further testing during the course of the flight; and on some occasions he used his Loran C set to conduct demonstration searches for the information of CAP personnel accompanying him in the aircraft. Mr. Bregstone further testified that, on other flights, he would take a CAP cadet up with him for an orientation flight, introducing the cadet to aspects of flight, navigation, etc.; and, on some of the cadet orientation flights, he would take his Loran C set along and test it during the course of the flight.

Of course, such activities as those summarized in the preceding paragraph did not have any possible connection with the rental of the aircraft. Consequently, they cannot properly be weighed by the court in

passing upon the deductibility of the plaintiffs' aircraft expenses for income tax purposes, because those matters were not brought to the attention of the Internal Revenue Service in the claim for refund which the plaintiffs filed with that agency. As stated earlier in the opinion, 26 U.S.C. § 7422(a), Treas. Reg. § 301.6402–2(b)(1), and governing court decisions make it plain that a taxpayer suing for a tax refund cannot litigate in court on grounds and factual bases not previously presented to the Internal Revenue Service.

With respect to the use by Mr. Bregstone of his aircraft in 1976 for rental purposes— the ground for relief asserted by the plaintiffs in the portion of their claim to the Internal Revenue Service relating to aircraft expenses—the record before the court is not persuasive. When Mr. Bregstone was asked on the stand whether his aircraft was leased to anyone in 1976, he replied: "I did fly with another person which I thought would be for pay but he did not pay me." Later, Mr. Bregstone testified that "Actually, there were two." Mr. Bregstone did not indicate that he ever turned over possession or custody of the aircraft to either man, or that either man ever operated the aircraft without Mr. Bregstone being present.

When questioned about the financial arrangements between Mr. Bregstone and the two persons mentioned by him, he said that each agreed to pay him $15 "per tach hour," to pay for the fuel and oil, and to help him with chores, such as washing and greasing the aircraft.

With respect to the extent of Mr. Bregstone's activities with the two men and the aircraft, Mr. Bregstone testified at one point that "[s]everal dozen hours" were involved, and he testified at another point that "[b]etween four and seven hours" for each of the two men were involved.

Mr. Bregstone never collected any money from either of the men, and there is nothing in the record to indicate that he ever made any effort to collect money from either of them.

Mr. Bregstone testified that his agreement with the two men was oral, and that there was no written lease or other written instrument covering his agreement with them.

It should also be mentioned that there is no evidence in the record of any sustained attempts by Mr. Bregstone to rent his aircraft to others (cf. Carkhuff v. Commissioner, 425 F.2d 1400, 1404 (6th Cir.1970)); and the record is also devoid of evidence tending to show that Mr. Bregstone's activities in connection with the aircraft were primarily motivated by his desire for profit through any sort of business enterprise (cf. Monfore v. United States, 214 Ct.Cl. 705, 722 (1977)).

■ The uncertain and ambiguous evidence in the record is not sufficient to support a finding that Mr. Bregstone held his aircraft for rental purposes in 1976, or even that he actually rented his aircraft to another person on any occasion during that year.

Consequently, the plaintiffs did not carry their burden of showing clearly (see International Trading Co. v. Commissioner, 275 F.2d 578, 584 (7th Cir.1960)) that the aircraft expenses in 1976 were properly deductible for income tax purposes.

It necessarily follows that the plaintiffs are not entitled to recover on the portion of their claim relating to aircraft expenses.

## CONCLUSION OF LAW

On the basis of the facts set out in the foregoing opinion, the court concludes as a matter of law and determines that the plaintiffs are entitled to recover, plus statutory interest, on the aspects of their claim relating to the deductibility of rental house expenses and depreciation, and of a charitable contribution to the Civil Air Patrol, but that they are not entitled to recover on the aspect of their claim relating to aircraft expenses.

Within 30 days from the date of this opinion, the parties shall file a stipulation setting out the amount of the plaintiffs' recovery on the bases allowed in this opin-

ion. Upon the receipt of the stipulation, the clerk will enter a judgment for the plaintiffs in the amount stipulated.

IT IS SO ORDERED.