The NEPTUNE MUTUAL ASSOCIA-
TION, LTD., OF BERMUDA,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 216–86T.

United States Claims Court.

Sept. 21, 1987.

**310**

John C. Richardson, New York City, for plaintiff. Alison E. Clapp, LeBoeuf, Lamb, Leiby & MacRae, New York City, of counsel.

Teresa T. Milton, Washington, D.C., with whom were Michael J. Dennis, Mildred L. Seidman, and Acting Asst. Atty. Gen. Michael C. Durney, for defendant.

## OPINION

NETTESHEIM, Judge.

At issue on cross-motions for summary judgment after argument is whether a foreign casualty insurer is liable for United States excise tax when it has been allowed to conduct a trade or business in a state and has paid United States income tax.

## FACTS

The facts discussed throughout this opinion are either undisputed or not adequately or meritoriously controverted. The Neptune Mutual Association ("Luxembourg"), a mutual insurance association, was formed under the laws of Luxembourg on February 24, 1972. Luxembourg was founded principally by members of the New Bedford, Massachusetts fishing fleet to provide protection and indemnity insurance for vessel owners. On July 13, 1976, Neptune Mutual Association, Ltd., of Bermuda ("plaintiff") was incorporated under the laws of Bermuda, as a successor to Luxembourg.

For the taxable periods at issue ending June 30, 1977, to June 30, 1980, plaintiff seeks a refund of excise taxes, interest thereon, and assessed penalties. Plaintiff originally paid federal income tax pursuant to Internal Revenue Code, 26 U.S.C. § 842 (1982) ("I.R.C."), which imposes income tax on foreign corporations conducting insurance business within the United States. The Internal Revenue Service (the "IRS") assessed plaintiff for excise tax under I.R.C. § 4371(1), which taxes four cents on each dollar of a premium paid on a policy of casualty insurance covering liability within the United States.

## DISCUSSION

### I. *Applicability of I.R.C. § 4371(1) excise tax*

█ Defendant concedes that plaintiff cannot be held liable for both federal income tax and excise tax.[1] The question then remains whether payment of federal income tax under I.R.C. § 842 preempts assessment of section 4371(1) excise tax. I.R.C. § 4371 provides, in pertinent part:

There is hereby imposed, on each policy of insurance, indemnity bond, annuity contract, or policy of reinsurance issued by any foreign insurer or reinsurer, a tax at the following rates:

(1) *Casualty insurance and indemnity bonds.*—Four cents on each dollar, or fractional part thereof, of the premium paid on the policy of casualty insurance or the indemnity bond, if issued to or for, or in the name of, an insured as defined in section 4372(d);

...

A foreign insurer for purposes of I.R.C. § 4371 includes an insurer that is a foreign corporation. I.R.C. § 4372(a). An insured for purposes of section 4371(1) includes "a domestic corporation ... or an individual resident of the United States, against, or with respect to risks, hazards, losses, or liabilities, wholly or in part within the United States." I.R.C. § 4372(b) defines a policy of casualty insurance as "any policy (other than life)" that effects "a contract of insurance." Exemptions to liability for excise tax are set forth by I.R.C. § 4373(1), which states, in pertinent part:

The tax imposed by section 4371 shall not apply to—

(1) *Domestic agent.*—Any policy, indemnity bond, or annuity contract signed or countersigned by an officer or agent of the insurer in a State, or in the District of Columbia, within which such insurer is authorized to do business; ...

Unless otherwise indicated, the term "foreign insurer" as used in this opinion signifies a foreign casualty insurer, since I.R.C. § 4371(2) imposes a different excise tax on foreign life insurers.

The applicability of these excise tax provisions is disputed *vis a vis* I.R.C. § 842, captioned "Foreign Corporations Carrying on Insurance Business," which provides:

If a foreign corporation carrying on an insurance business within the United States would qualify under part I, II or III of this subchapter for the taxable year if (without regard to income not effectively connected with the conduct of any trade or business within the United States) it were a domestic corporation, such corporation shall be taxable under such part on its income effectively connected with its conduct of any trade or business within the United States. With respect to the remainder of its income, which is from sources within the United States, such a foreign corporation shall be taxable as provided in section 881.

Plaintiff asserts that Congress intended the excise tax to apply only if the premiums paid to a foreign insurer are not subject to income tax. It is plaintiff's position that because it conducted insurance business within the United States, having received no objection from the Commonwealth of Massachusetts, it is only liable for income tax. Having paid income tax, plaintiff asserts that it is freed from excise tax liability.

Although conceding plaintiff cannot be liable for both taxes, defendant argues that plaintiff can avoid liability for excise tax only if it meets the excise tax exemption criteria set forth in I.R.C. § 4373(1). Once the exemption criteria have been satisfied, only then does plaintiff become subject to liability for income tax. Thus, it is defendant's position that the excise tax provisions take precedence or have priority over the income tax provisions, that the latter do not

---

1. Defendant conceded the tax periods applicable to Luxembourg. Liability for both federal income and excise taxes would be in violation of the "non-discrimination" clause of the Convention Between the United States of America and the Grand Duchy of Luxembourg with Respect to Taxes on Income and Property, art. XX(3), whereby "citizens of one of the Contracting States shall not, while residents of the other Contracting State, be subject therein to other or more burdensome taxes than are the citizens of such other State...."

take precedence or have priority over the former, and that the statutory scheme makes no deference to the income tax provisions. If this issue is resolved in defendant's favor, defendant contends that plaintiff cannot satisfy the exemption criteria of section 4373(1) by a tacit understanding with Massachusetts or by the Commonwealth's inaction with respect to enforcement of its insurance laws. Even if it were otherwise, defendant argues that the subject policies were not signed or countersigned in Massachusetts.

Simply stated, the parties dispute where the tax analysis for a foreign insurer doing business within the United States should begin. Plaintiff, relying on legislative intent, proposes that I.R.C. § 842 takes precedence, since liability for income tax under section 842 renders a foreign corporation liable for income tax when it is carrying on business within the United States. Therefore, according to plaintiff, it is unnecessary to determine whether the foreign insurer is exempt from excise tax because it is authorized to do business in a state and signs or countersigns policies in that state. Defendant, relying on the language of the statute, urges that the exemption criteria of section 4373(1) must be satisfied before the foreign insurer becomes liable for income tax. The issue is one of statutory construction.

"Statutory construction[2] must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985) (citation omitted). The Federal Circuit has applied in tax cases the Supreme Court's direction in *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), that " '[w]here the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion.' " *Henry*

*v. United States*, 793 F.2d 289, 293 (Fed. Cir.1986); *see also Texas State Comm'n for the Blind v. United States*, 796 F.2d 400, 406 (Fed.Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 874, 93 L.Ed.2d 828 (1987) (quoting *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). Slavish adherence to plain meaning "on a purely linguistic level" is not required if the interpretation of unambiguous language "does not do justice to the realities of the situation." *Texas State Comm'n*, 796 F.2d at 406. The Federal Circuit quoted *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892), for the " 'familiar rule that a thing may be within the letter of the statute, but not within its spirit nor within the intention of its makers.' " *Texas State Comm'n*, 796 F.2d at 406; *see also Institut Pasteur v. United States*, 814 F.2d 624, 627 (Fed.Cir. 1987). *But see Texas State Comm'n*, 796 F.2d at 417 (dissenting op.).

Judge Archer in *Reid v. Department of Commerce*, 793 F.2d 277, 281–82 (Fed.Cir. 1986), said that a court should not look under the plain meaning of unambiguous language to divine the real purpose of Congress

unless a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee of Indiana University v. United States*, 618 F.2d 736, 739, 233 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*,

---

**2.** Plaintiff sought to file a post-argument brief addressing this argument. In the order denying plaintiff's motion as untimely, it was noted that defendant alerted plaintiff to this argument in

its reply brief. In fact, defendant made the point earlier in its cross-moving and opposition brief.

366 U.S. [643] at 648, 81 S.Ct. [1278] at 1281 [6 L.Ed.2d 575 (1961)]; 2A Sands § 46.07.

Consistent with these canons of statutory interpretation, the tax code provisions in this case must be construed harmoniously and in a manner to give effect to all their terms. The quoted provisions of I.R.C. §§ 4371–4373 set forth liability for and exemption from excise tax applicable to foreign insurers. I.R.C. § 842 sets forth liability for income tax applicable to foreign insurers. However, as defendant concedes, the statutory exemption from the excise tax is not co-extensive with the scope of the provision imposing income tax, since Congress intended that only one tax apply: "Given this imperfection in the statutory scheme, defendant submits that the issue must be resolved by applying the only statutory standard supplied by Congress to resolve the problems of overlapping coverage of the two taxes...." Def's Br. filed July 10, 1987, at 3.

■ The Supreme Court has noted that "[t]he IRS's understanding of the terms of the Code is entitled to considerable deference...." *United States v. National Bank of Commerce*, 472 U.S. 713, 730, 105 S.Ct. 2919, 2929, 86 L.Ed.2d 565 (1985). The understanding put forth by defendant comports with the plain language of the subject provisions. Section 4373(1) supplies, by its plain terms, the standard for determining when a foreign insurer is liable for an income tax. The determination of whether a foreign insurer is doing business "within the United States" to establish liability for income tax under I.R.C. § 842 turns on whether the foreign insurer is doing business "in a [s]tate" under I.R.C. § 4373(1). Neither section 842 nor section 4373(1) exempts the foreign insurer from liability for excise tax if it is subject to income tax; rather, the excise tax provisions apply unless the foreign insurer is deemed authorized to do business in a state, in which case the foreign insurer is liable for income tax. In I.R.C. § 4373(1) Congress legislated by means of criteria—free from any ambiguity—that foreign insurers must satisfy the exemption criteria

in section 4373(1) to be exempt from excise tax, which would render them subject to income tax. Plaintiff rejoins that endorsing the plain meaning of I.R.C. §§ 4371–4373, in conjunction with that of section 842, would lead to an unreasonable result and run athwart the expressed congressional purpose motivating enactment of the excise tax provisions involved in this case. The legislative history has been consulted to test plaintiff's theories, even though the analysis could stop with the statutory language. *See Henry v. United States*, 793 F.2d at 293. Guiding this inquiry is the principle that interpretation of the statute beyond its clear language to discern a statutory purpose at variance with its terms must disclose a "clearly expressed legislative intent to the contrary." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

To equalize an imbalance of taxation existing where domestic and resident foreign insurance companies were subject to United States income tax while their nonresident foreign counterparts, which received insurance premiums from their United States insureds, were free from both federal income and excise taxes, Congress enacted the Revenue Act of 1918, Pub.L. No. 254, 40 Stat. 1057. *See United States v. Northumberland Ins. Co.*, 521 F.Supp. 70, 77 (D.N.J.1981) (discussing legislative history). Under the 1918 Act, a three-percent stamp tax was imposed on insurance policies issued by nonresident foreign insurers and a one-percent tax was levied against policies issued by domestic and resident foreign insurers. Revenue Act of 1918, § 237, 40 Stat. 1080. In 1921 the one-percent stamp tax was repealed, hence levying the stamp tax only against nonresident foreign insurers. Revenue Act of 1921, § 1400, Pub.L. No. 98, 42 Stat. 227, 320. The legislative history of the 1921 Act indicates that the purpose of the original stamp tax was to fill in where the income tax did not apply. *See Hearings on H.R. 8245 Before the Senate Comm. on Finance*, 67th Cong., 1st Sess. 318 (1921); S.Rep. No. 275, 67th Cong., 1st Sess. 18 (1921); 61 Cong.Rec. 7180–81 (1921) (state-

ment of Sen. Smoot). Because the predecessor of I.R.C. § 4371 is section 237 of the 1918 Act, the identical intent to tax nonresident foreign insurers underlies section 4371.

The Foreign Investors Tax Act of 1966, Pub.L. No. 89–809, § 104(i)(1), 80 Stat. 1539, 1561, enacted I.R.C. § 842. Although the objective of the precursor to section 4371 had been to provide protection for domestic corporations against possible tax favoritism for foreign corporations, *Hearings on H.R. 7378 Before the Senate Comm. on Finance*, 77th Cong., 2d Sess. 121–22 (1942), section 842 of the Foreign Investors Tax Act was intended, instead, to improve the tax position of foreign corporations already paying United States income tax. The House Committee on Ways and Means described the change:

> [L]ife insurance companies and other insurance companies, ... should be taxed on their investment income in the same manner as other foreign corporations. For this reason, the bill provides that a foreign corporation carrying on an insurance business within the United States is to be taxed in the same manner as domestic companies....

H.R.Rep. No. 1450, 89th Cong., 1st Sess. 31 (1966). The enactment of I.R.C. § 842 resulted in that portion of a foreign insurance company's income, which was connected with the conduct of business within the United States, becoming taxable under the same standards applicable to the income of domestic insurance companies. Nothing in the enactment of section 842 altered the applicability of section 4371, nor did it alter the standard under which a foreign corporation would be subject to United States income tax.

In the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1036, 90 Stat. 1520, 1633, Congress altered the source rule for underwriting income to avoid "artificial manipulation by taxpayers" and reach United States source income law if a contract is negotiated and executed out of the United States. S.Rep. No. 94–938, 94th Cong., 2d Sess. 257 (1976), U.S.Code Cong. & Admin. News 1976, pp. 2897, 3688. The report

states: "The new source rule is not intended to change existing law with respect to the determination of whether foreign source income is effectively connected with the conduct of a trade or business within the United States." *Id.* Thus, the exemption criteria of section 4373(1) requiring that the policy be "signed or countersigned" in a state "where the insurer is authorized to do business" were expressly preserved.

Plaintiff points out that the Revenue Act of 1942, Pub.L. No. 77–753, § 502(b), 56 Stat. 798, 956, added a provision (the precursor of I.R.C. § 4371(2)), making foreign life insurers also liable for excise tax, although at a lower rate, and specifically providing that a foreign life insurer would not be liable for the tax if it was subject to income tax under the precursor to I.R.C. § 819. Section 819, in turn, was intended to prevent avoidance of income tax in the same manner as the 1976 Tax Reform Act. From this plaintiff argues that Congress intended foreign casualty and life insurers to be treated in the same manner and that since the latter expressly were exempted from excise tax if they were subject to income tax, I.R.C. § 4371(1) must be construed accordingly.

Plaintiff relies on legislative history confirming that section 502 of the 1942 Act extended the stamp tax to all insurance policies for the purpose of equalizing tax treatment of domestic and foreign insurers, citing *Hearings on H.R. 7378 Before the Senate Comm. on Finance*, 77th Cong., 2d Sess. 121–22 (1942), and H.R.Rep. No. 2333, 77th Cong., 1st Sess. 61 (1942). Plaintiff concludes: "Congress intended to apply the same rules as governed the stamp tax on casualty insurance." Plf's Br. filed June 26, 1987, at 7 n. 4. This is true. Plaintiff represents that when Congress in the 1942 Revenue Act exempted foreign life insurers from excise tax if they were subject to income tax, Congress signaled its intent that foreign casualty insurers had been exempt if they paid income tax. But section 502(b) did not exempt a foreign life insurer from excise tax if it was subject to income tax, as plaintiff represents. Indeed, the 1942 Act 1) reenacted in section

502(a) for foreign casualty insurers the same provisions as today are I.R.C. §§ 4371(1) and 4373(1), 56 Stat. 955–56; and 2) specifically incorporated the identical exemption criteria for foreign life insurers in section 502(b). 56 Stat. 956. At a later date, section 502(b) was amended to exempt a foreign life insurer from payment of excise tax if it was subject to income tax, but Congress left intact the balance of the 1942 changes and additions, including the section 4373(1) exemption criteria applicable to foreign casualty insurers and the omission of any provision exempting these insurers from excise tax if they were subject to income tax. Since the excise taxes applicable to foreign casualty and life insurers differ in amount, disparate treatment is not an unreasonable proposition. Moreover, when Congress enacted the foreign underwriting source income provision of the 1976 Tax Reform Act, recognizing the existing standards for determining connection with a trade or business in the United States, presumptively Congress was aware of how the IRS had applied I.R.C. §§ 4371(1) and 4373(1), and their precursors, since 1918.

Citing several IRS interpretative sources, plaintiff next argues that the income tax provision, I.R.C. § 842, takes priority over section 4371(1). Gen.Couns.Mem. 38,052 (Aug. 20, 1979),[3] which was issued long after the passage of the 1921 Act, acknowledges that premiums forwarded by domestic agents were not subject to withholding provisions:

> Congress intended to require withholding under section 1442(a)'s predecessor only on those kinds of gross income that have a very high content of net income. Congress did not intend that premiums received for the insurance of United States risks by foreign insurance companies not engaged in a trade or business in the United States be subject to withholding because very little net income and some-

times a loss is derived from those premiums. . . .

*Id.* at 3858, *construing* I.T. 1359, I–1 C.B. 292 (1922) (holding that insurance premiums not subject to withholding tax). Gen. Couns.Mem. 38,052 interprets I.T. 1359 as indicating that "Congress imposed a stamp tax (the predecessor of section 4371(a)) on those premiums received by foreign insurance companies not engaged in a trade or business in the United States." Gen. Couns.Mem. 38,052 at 3858.

Plaintiff also points to, *inter alia,* the following passages from Gen.Couns.Mem. 38,052:

> To be consistent with Congress's clear, longstanding, and legislatively re-enacted intent not to apply the section 4371 excise tax to foreign insurance companies subject to United States income tax on their insurance business in the United States, we think section 4373(1) should be interpreted in a reasonable and practical manner that will result in the application of the excise tax only when the United States income tax does not apply. We believe that if state law permits a foreign insurer to engage in certain insurance activities within that state (signing or countersigning policies) without obtaining a license and, as a result of these activities, the foreign insurer is engaged in business in that state and thus is engaged in business in the United States under sections 842 and 864, then the foreign insurer is sufficiently (de facto) authorized to do business (for purposes of section 4373(1)) within the state in which it is so conducting business. *See* G.C.M. 35066 and G.C.M. 35142 in which the states involved permitted foreign insurers to engage in certain insurance business within the state without obtaining a license. Therefore, any foreign insurer that is considered to be engaged in an insurance business in the United States under sections 842 and 864, and

**3.** General counsel memoranda are not to be relied upon or otherwise cited as precedent by taxpayers, as announced expressly in the memoranda themselves. However, given the lack of case law in this area, Gen.Couns.Mem. 38,052 will be used to indicate the position taken by the

IRS. *See Minnesota Power & Light Co. v. United States,* 6 Cl.Ct. 558, 565 n. 5 (1984) (general counsel memoranda "state current Internal Revenue Service policies and interpretations with respect to legal issues"), *rev'd on other grounds,* 782 F.2d 167 (Fed.Cir.1986).

consequently subjected to United States income tax on such business, will be considered to be authorized to do business, within the meaning of section 4373(1), in the state where it is legally conducting such business. As a result, any foreign insurance company subject to United States income tax on such authorized insurance business (which includes the signing or countersigning of policies in the state so authorized) will not be subject to the excise tax pursuant to section 4373(1).

Because the Service has no published position regarding the application of the income tax and the section 4371 excise tax in the above circumstances, we recommend that you publish a revenue ruling clarifying this area at the same time that I.T. 1359 is republished. We suggest publication of a revenue ruling indicating that if a state law permits a foreign insurer to engage in certain insurance activities within that state (which include signing or countersigning of policies) without obtaining a license and, as a result of engaging in such activities, the foreign insurer is engaged in business in that state and thus the United States under sections 842 and 864, thereby being subject to the income tax of section 821 or 831 on its insurance business, then the foreign insurer will be considered to be authorized to do business for purposes of section 4373(1) within that state. The effect of such a ruling would be that any premiums received by such foreign insurer with respect to the above insurance activities would not be subject to the section 4371 excise tax since the underwriting income from those activities is subject to income tax under section 821 or 831. We note that none of the foreign insurer's insurance income should escape United States taxation because if the underwriting income is not subject to the income tax, then such insurer will not be considered to be authorized to do business for the purposes of section 4373(1) and the section 4371 excise tax will apply to the premiums paid.

*Id.* at 3869–70. This language reinforces the plain meaning of section 4373(1), read in conjunction with section 842, to wit, (1) that excise tax will apply only when income tax does not; (2) if state law permits an insurer to conduct business, such as signing or countersigning policies, the foreign insurer is engaged in business in that state under I.R.C. § 4373(1); and (3) under such circumstances the insurer is exempt from excise tax and is subject to income tax based upon its conducting a trade or business within the United States.

Plaintiff also relies on Rev.Rul. 80–225, 1980–2 C.B. 318, one of the two revenue rulings issued as recommended by Gen. Couns.Mem. 38,052. Rev.Rul. 80–225 addressed the issue whether federal excise tax imposed by section 4371(1) applies to an unlicensed surplus lines insurer (insuring against risks that licensed insurers will not accept) that was allowed by the laws of a state to conduct insurance business in that state. The insurer was found to be engaged in a trade or business in the United States as a result of its regularly signing and countersigning policies in that state. Having been found authorized to do business in the state within the meaning of I.R.C. § 4373(1), the foreign insurer was not liable for excise tax and became subject to income tax. Thus, sections 4371(1) and 4373(1) proved to be the initial point of inquiry. The IRS did state in Rev.Rul. 80–225 that "Congress adopted section 4371 because it did· not believe that any United States income tax ... was applicable to insurance premiums paid to foreign insurance companies not engaged in trade or business in the United States." 1980–2 C.B. at 318 (citation omitted). However, that language does not support plaintiff's position that Congress intended income tax liability to preempt assessment of excise tax without reference to the exemption criteria of I.R.C. § 4373(1). It was only after the IRS found the taxpayer had satisfied the requirements of section 4373(1) that the foreign insurer in Rev.Rul. 80–225 was deemed to be doing business within the United States.[4] *See also* Rev.Rul. 80–222,

---

**4.** The IRS has also addressed I.R.C. § 4373(1) in    determining the applicability of excise tax in

1980–2 C.B. 211 (foreign insurer subject to excise tax when policies not signed or countersigned in the United States).

Plaintiff cites *United States v. Northumberland Insurance Co.*, 521 F.Supp. 70, which describes congressional intent in enacting the Revenue Act of 1921 as rectifying the competitive imbalance resulting because "premiums paid to foreign insurance companies not engaged in a trade or business in the United States were not subject to any United States income tax...." 521 F.Supp. at 77 (citation omitted). This undisputed statement of legislative purpose nonetheless is not inconsistent with the means Congress chose to accomplish it through the exemption criteria of I.R.C. § 4373(1). For example, the court in *Northumberland* determined that the foreign reinsurer of another foreign reinsurer maintained no office in the United States, was not authorized to do business in the United States, and was not conducting a trade or business in the United States and that the premiums paid to it therefore were not subject to income tax. "Consequently, these premiums are are instead taxable under § 4371(3)." 521 F.Supp. at 78. An analysis beginning under section 4373(1) would have led to the same result, but the telling point is that the exemption criteria of section 4373(1) would have to be satisfied if the facts in *Northumberland* had not rendered the section 4373(1) exemption facially inapplicable. Rev.Rul. 80–222, 1980–2 C.B. 211, took the same approach in finding that the policies were not signed or countersigned in the United States and that the foreign insurer was not otherwise conducting a trade or business within the United States. But no authority with the stature of a case or Revenue Ruling takes the position that if a foreign insurer can be considered to conduct a trade or business within the United States, inquiry need not

be made whether the insurer satisfies the exemption criteria of section 4373(1) in order to be exempt from excise tax and liable for income tax.

In enacting I.R.C. § 4373(1), Congress provided the only exemption to the liability for excise tax established in section 4371(1). As defendant suggests, were plaintiff to prevail on its argument of preemption, a new exemption would be created. Regardless of the exemption criteria of section 4373(1), a foreign insurer could avoid excise tax by simply paying income tax. This proposed power of election would enable a foreign insurer reporting losses, such as plaintiff, to pay less tax.[5] Congress alone has the power to create additional exemptions, not this court.

Thus, to be eligible for income tax liability rather than excise tax liability, plaintiff must meet the exemption criteria of I.R.C. § 4373(1). This construction comports the plain language of I.R.C. §§ 4371(1) and 4373(1), and debilitates neither the rule of reason nor congressional intent. Accordingly, the question becomes whether the section 4373(1) requirements have been satisfied.

## II. *Criteria for exemption from the excise tax imposed by I.R.C. § 4373(1)*

Under section 4373(1) "[a]ny policy ... signed or countersigned by an officer or agent of the insurer in a state, or in the District of Columbia, within which such insurer is authorized to do business" will not be subject to excise tax liability under section 4371.

### A. *Authorized to do business*

Plaintiff does not claim that it held formal authorization to do business in Massachusetts. Rather, plaintiff contends that it was permitted by the Commissioner of In-

Priv.Ltr.Rul. 8,703,046 (Oct. 21, 1986), and Priv. Ltr.Rul. 8,248,119 (Aug. 31, 1982) (exempting foreign insurers from excise tax upon finding they were authorized by state law to do business and their policies were signed in the authorizing state, consequently subjecting these insurers to income tax). I.R.C. § 6110(j)(3) allows private letter rulings to be used or cited as precedent

with regard to taxes imposed under subtitle D, which encompasses excise tax.

5. A foreign insurer can avoid paying excise tax by structuring its mode of transacting business to avoid meeting the section 4373(1) exemption criteria. But a foreign insurer cannot elect to pay income tax rather than section 4371(1) excise tax.

surance of the Commonwealth of Massachusetts (the "Commissioner") to conduct business activities in the state and therefore was "authorized" under I.R.C. § 4373(1). The issues thus arise as to whether permission by a state to do business fulfills the authorization requirement of section 4373(1) and, if so, whether the Commonwealth of Massachusetts granted plaintiff such permission.

Plaintiff relies on Rev.Rul. 80–225, 1980 C.B. 318, and Gen.Couns.Mem. 38,052 (Aug. 20, 1979). According to these sources, a foreign insurer can be authorized to do business within the meaning of I.R.C. § 4373(1) if state law permits the insurer to engage in certain insurance activities, e.g., signing and countersigning policies, within that state without obtaining a license.

The major hurdle plaintiff must surmount is whether it was permitted under Massachusetts law to do business within the state. Plaintiff constructs its argument on Mass.Gen.Laws Ann., ch. 175, § 160 (West Supp.1986). Under this statute the prohibition at the time of Luxembourg's organization on acquiring insurance from "a foreign company not lawfully admitted to issue such policies or contracts in this commonwealth" did not apply to any insurance "which cannot, to the advantage of the insured, be placed in authorized companies." However, section 160 was amended in 1973 by a provision requiring foreign insurance companies to have net assets of at least $1 million and to satisfy all the requirements of surplus lines law under section 168 Mass.Gen.Laws Ann., ch. 175, § 168 (West Supp.1986). Pursuant to section 168, an unauthorized foreign insurer must comply with specified financial and reporting requirements before a licensed broker can do business with such an insurer. Although events leading to Luxembourg's organization indicate that it would not be advantageous to place insurance with authorized companies, plaintiff has made no showing that the requirements mandated in the 1973 amendment were satisfied, nor can its conduct be viewed as attempting to comply with these requirements.

Luxembourg's organization directly resulted from the great difficulty confronting fishing vessel owners in New Bedford, Massachusetts, in obtaining insurance coverage for their vessels. Even when coverage was available, it was offered only at unacceptable rates. The problem heightened to the point where authorized insurers, subject to state regulation, were going into bankruptcy. With coverage unobtainable, vessel owners were forced to keep their vessels in port. As a solution the vessel owners instigated the formation of Luxembourg, a mutual insurance association formed under Luxembourg law, to provide protection and indemnity coverage at acceptable rates.

The Massachusetts Commissioner of Insurance responded to an inquiry regarding Luxembourg's formation and its plan to provide insurance to vessel owners. In his May 25, 1972 letter, the Commissioner stated, "[T]here is no legal bar to formation of ... [Luxembourg]." Preceding this letter a meeting was held with the Commissioner at which officers of Luxembourg were present. Among the information disclosed to the Commissioner were Luxembourg's plans to handle claims within Massachusetts and to make a local representative available, through whom it would work in lieu of a broker. It was also made clear that Luxembourg's local representative's office would receive applications for membership and insurance coverage.

At the time the Commissioner was aware of Luxembourg's intent to conduct business in Massachusetts. Yet, the Commissioner's letter, finding no legal bar to Luxembourg's organization, does not constitute express authorization. Instead, the Commissioner appears to have taken a middle-of-the-road approach. By not granting express authorization, Luxembourg was free from regulation under Massachusetts law. At the same time, it was not barred from carrying forth its proposed business in Massachusetts.

Plaintiff emphasizes the letter recognizing "no legal bar" to its activities. Upon this recognition plaintiff rests its assertion

that the Commissioner had granted it permission to do business in Massachusetts. Plaintiff calls for an extremely broad reading of Rev.Rul. 80–225 and Gen.Couns. Mem. 38,052, such that they merely require permission by the state *i.e.*, from the Commissioner of Insurance. This broad reading is contrary to the language of the Revenue Ruling and general counsel memorandum. Taxpayer X in Rev.Rul. 80–225 was deemed authorized in part because *"the laws of State A permit* X to engage in certain surplus lines insurance activities in State A." 1980–1 C.B. 318 (emphasis added). The IRS also noted in Gen.Couns. Mem. 38,052 grounds for authorization under section 4373(1) *"if state law permits* a foreign insurer to engage in certain insurance activities within that state." *Id.* at 3869 (emphasis added.) Hence, a letter from the Commissioner stating that plaintiff is not barred legally from conducting business in Massachusetts does not constitute a grant of "permission" under Massachusetts law to satisfy the requirement of I.R.C. § 4373(1).

■ In a letter dated February 10, 1982, the Commissioner reaffirmed that his position regarding plaintiff was the same as that stated in the May 25, 1972 letter with respect to Luxembourg. Plaintiff argues that this later letter is a waiver of the net asset requirement and the requirements under section 168. The provision of section 160 waiving these requirements provides:

> The commissioner may, after an appropriate hearing authorize a company that does not have net assets as prescribed or a deposit in the amount required by section [168] ... to be used by insurance brokers and special insurance brokers to issue coverage on ... marine risks if he finds on the basis of the evidence presented at such a hearing that necessary coverage is not available to such risks from companies meeting the aforesaid requirements so long as he is satisfied that its officers and directors are of good repute and that the management of the company is carrying out its insurance contracts in good faith.... Any such finding shall be reduced to writing and

the authorization so given may at any time be revoked by the commissioner. Mass.Gen.Laws Ann., ch. 175, § 160.

Plaintiff's argument fails for several reasons. Initially, there is no indication in the record of a hearing, nor is there a written finding of such a waiver. The waiver provision also addresses insurance companies that utilize insurance brokers. Plaintiff worked through its officers and employees; it has never operated through insurance brokers. Hence, as defendant urges, even if a waiver conceivably could have been granted, it would not extend to plaintiff, which never worked through a broker. Finally, the 1982 letter lacks relevance because it was written outside the time period at issue in which plaintiff's status as authorized to do business must be determined.

■ Plaintiff further asserts that it was permitted to operate within the state by virtue of the Commissioner's failure to prosecute. This argument is based on Mass.Gen.Laws Ann., ch. 175, § 3A (West), which states:

> The commissioner shall administer and enforce the provisions of this chapter.... If upon complaint, examination or other evidence exhibited to him he is of the opinion that any provision of said chapters has been violated, he shall forthwith report the facts to the attorney general, to the proper district attorney or to the commissioner of public safety, who shall cause the offender to be prosecuted therefor.

Despite the fact that the Commissioner has not taken action to prosecute, plaintiff cannot bridge the gap that a failure of prosecution signifies that the Commissioner considered plaintiff's activities to be authorized under state law. The letter stating that plaintiff was not legally barred also does not bridge the gap. There is simply no correlation between failure to prosecute and authorization or permission. Plaintiff's argument can be likened to the scenario whereby an officer of the law ignores a criminal offense. Although the offender was not arrested, one cannot conclude that the officer approved of the of-

fender's activity, nor does it make the conduct any less an offense.

It is the long-standing policy of Congress to allow states to regulate insurance business. *See, e.g.,* 15 U.S.C. § 1011 (1982). By deferring the decision to the states of whether to authorize a foreign insurer to do business, Congress coordinated the excise tax statute with the states' power to regulate insurance. Although Massachusetts did not restrain plaintiff from carrying forth its insurance activities, apparently in an attempt to meet the state's marine insurance crisis in the early 1970's, it has never granted plaintiff, or its predecessor Luxembourg, authorization to conduct business in Massachusetts, nor did state law permit plaintiff's activities. The fact that plaintiff conducted business activities within the state does not exempt it from excise tax liability. Having failed to meet the authorization requirement of I.R.C. § 4373(1), plaintiff is not exempt from excise tax.

B. *Signed or countersigned in the state*

■ According to plaintiff, the inquiry is not whether policies are "signed or countersigned" in the authorizing state, but whether the insurer was engaged in a trade or business in the United States. Plaintiff again asserts that *United States v. Northumberland Insurance Co.,* 521 F.Supp. 70 (D.N.J.1981), lends support. In *Northumberland* the district court held a foreign reinsurer liable for excise tax. The decision was based on the facts that the insurer did not maintain an office in the United States, was not authorized to do business in the United States, and was not engaged in a trade or business in the United States. Because the "signed or countersigned" issue was never specifically confronted in *Northumberland,* plaintiff contends that the court applied the words "signed or countersigned" as effectively meaning "engaged in a trade or business in the United States." Rev.Rul. 80–222, 180 C.B. 318, equates the concept in stating that the foreign insurer did not sign or countersign policies in the United States or otherwise engage in the conduct of any

insurance business with the United States. However, since the foreign reinsurer in *Northumberland* for all practical purposes did nothing in the United States, it was unnecessary to examine whether it signed or countersigned policies.

Plaintiff's interpretation of Rev.Rul. 80–225 is also misfounded. The IRS determined that because it regularly signed or countersigned policies in the state the laws of which permitted it to do so, the foreign insurer was conducting a trade or business in the United States so as to be liable under income tax provisions. From this plaintiff asserts that the fact the insurer was engaged in a trade or business led the IRS to find that the excise tax exemption applied. Indeed, as discussed previously, the Revenue Ruling looked to the exemption criteria before concluding that the permitted and regularly conducted activities exempting the foreign insurer from excise tax amounted to the conduct of a trade or business within the United States.

The necessity of signing and countersigning the policies to qualify as exempt from excise tax was established early in I.T. 1359, I–1 C.B. 292 (1922). The IRS was faced with the issue of whether premiums received by foreign insurers should be subject to income withholding tax. The IRS determined, "[t]he policies are not signed or countersigned by any American agent are, therefore, subject to the stamp tax." *Id.* at 292. In light of this ruling, the importance of the "signing or countersigning" requirement cannot be ignored. More recently the IRS has reiterated: "[S]uch policies that are signed or countersigned by an insurer's officer or agent in a state or the District of Columbia, within which the insurer is authorized to do business, are specifically excepted by section 4373(1) from the imposition of this excise tax." Rev.Rul. 80–222, 1980–2 C.B. 211. *But see* Priv.Ltr.Rul. 8110048 (Dec. 10, 1981); *see supra* note 4.

Finally, plaintiff contends that the purpose of signing and countersigning is not as relevant today. The requirement was once used to provide a local agent against whom disputes could be brought. Today,

however, jurisdiction more easily can be obtained over foreign insurers. Unfortunately, the reasons for signing and countersigning by an authorized agent in the state are still relevant, as evidenced by concerns voiced in the May 25, 1972 letter from the Massachusetts Commissioner of Insurance, which, as discussed previously, was reaffirmed as to plaintiff. Among those concerns was the fact that Massachusetts law could not govern Luxembourg's capitalization nor its use of funds. Furthermore, service of process would be difficult, and Luxembourg was not subject to state examination or other procedures designed against insolvency.

During the tax periods ending June 30, 1977, to June 30, 1980, plaintiff's Certificates of Entry were signed by the manager of Westbroke Ltd. in Bermuda. Applications for insurance, however, were approved and initialed in Massachusetts by Luxembourg's officers and directors. I.R.C. § 4373(1) requires policies to be signed or countersigned by an officer or agent of a foreign insurer in a state in which it is authorized to do business. The issue becomes what constitutes a policy of casualty insurance under I.R.C. § 4372(b).

Plaintiff took the position at argument, as it did before the IRS, that its Certificates of Entry constituted the policies that it issued. Consistent with this position, plaintiff maintained before the IRS that approval of applications constituted an "[indication] of acceptance and servicing of the policies" in the United States. Plf's Protest, Aug. 19, 1981, at 16. Only in litigation, however, did plaintiff urge that applications for insurance constituted policies of insurance. For the reasons discussed in part III of this opinion, this contention was not made to the IRS in connection with plaintiff's refund claims. Therefore, it cannot pose a genuine issue of material fact that inhibits grant of defendant's cross-motion for summary judgment on the issue of whether plaintiff's policies were signed or countersigned in the United States.

Plaintiff has not demonstrated that it met either of the criteria of I.R.C. § 4373(1) that would exempt it from liability for ex-

cise tax for the years still in suit, nor are there contested factual issues with respect to this claim.

III. *The variance doctrine*

■ It has been firmly established under the variance doctrine that this court lacks jurisdiction to consider a ground for recovery not set forth in the claim for refund. *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Northern Illinois Gas Co. v. United States,* 12 Cl.Ct. 84 (1987); *Burlington Northern Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866 (1982); *Union Pac. R.R. v. United States,* 182 Ct.Cl. 103, 389 F.2d 437 (1968); *see also* Treas.Reg. § 301.6402–2(b)(1) (1976).

The variance doctrine is derived from I.R.C. § 7422(a) which provides, in pertinent part: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed...." Furthermore, "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas.Reg. § 301.6402–2(b)(1); *see Pinckes v. United States,* 7 Cl.Ct. 570, 571 (1985). The Court of Claims explained that the reason for disallowing a variant claim is "to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *Union Pacific,* 182 Ct.Cl. at 109, 389 F.2d at 442.

Nowhere in its claims for refund for tax years ending June 30, 1977, to June 30, 1980, has plaintiff made the assertion that it is exempt from I.R.C. § 4371(1) by meeting the section 4373(1) exemption criteria. The argument plaintiff presented was simply that because it paid income tax, it was not liable for excise tax. However, in its written protest of August 19, 1981, as supplemented on March 31, 1982, plaintiff did argue that it satisfied both section 4373(1)

exemption criteria. It is well established that an informal refund claim sufficient to satisfy section 7422(a) can be based on a written protest. *Furst v. United States,* 230 Ct.Cl. 375, 381, 678 F.2d 147, 152 (1982); *see also Pinkes,* 7 Cl.Ct. at 571. Although defendant argues forcefully that plaintiff later abandoned this argument by including it in its claims for refund for earlier years and omitting it in its claims for the periods ending June 30, 1977, through June 30, 1980, the protest letter makes the argument to section 4373(1) criteria for all tax years. Nonetheless, as discussed previously, plaintiff did not give the IRS notice in its refund claims or other written materials that it contended for recognition of applications for insurance as casualty insurance policies within the meaning of I.R.C. § 4372(b). It would undermine the policy of the variance doctrine to allow plaintiff to introduce this substantially variant theory in court.

■ In addition, defendant contends that plaintiff is barred under the variance doctrine from arguing that it is entitled to a refund of penalties assessed, arguing that plaintiff never raised a separate claim of entitlement or stated a basis on which such a refund could be made. Each of plaintiff's claims for refund stated in pertinent part:

> Consequently, the taxpayer, having filed income tax returns on Form 1120M for the calendar year encompassing this quarter and paid the Federal income tax reflected thereon, is not liable for the assessed excise tax, penalties, and interest paid and is entitled to an abatement of the remainder for this quarter.

The basis for plaintiff's claims was that the income tax, not excise tax, was applicable. This statement expressly put the IRS on notice of a claim to refund of penalties because plaintiff had paid income tax. Defendant is correct that plaintiff failed specifically to alert the IRS in its refund claims that its failure to file or make deposit was "due to reasonable cause and not due to willful neglect." I.R.C. § 6651(a)(1); Treas.Reg. § 301.1651–1(c)(1) (1976). That theory could be viewed as implicit in plain-

tiff's statement of claim, *i.e.,* that since plaintiff paid income tax, it had reasonable justification for taking the position that it was not liable for excise tax. *See Considine v. United States,* 227 Ct.Cl. 77, 88, 645 F.2d 925, 933 (1981) (claim held adequately to challenge penalty by contesting liability for tax assessed and noting "therefore no penalty is properly assessable....") In any event, plaintiff's August 19, 1981 protest letter and the March 31, 1982 letter supplement resolve any lurking uncertainty by expressing the argument in the statutory argot. *See Walker v. United States,* 143 F.Supp. 566, 567 (N.D.Tex.1956) (failure to particularize in what respect collection of penalty was unconstitutional did not render claim insufficient), *aff'd,* 240 F.2d 601 (5th Cir.), *cert. denied,* 354 U.S. 939, 77 S.Ct. 1402, 1 L.Ed.2d 1538 (1957). These written materials constitute an informal claim for refund of the penalties on the same grounds argued in court.

IV. *Assessment of penalties*

Penalties were assessed against plaintiff under I.R.C. § 6651 for failure to file excise tax Form 720 and under section 6656 for failure to deposit excise taxes. These penalties can be avoided if plaintiff can show that its failure to file or make deposit was "due to reasonable cause and not due to willful neglect." I.R.C. § 6651(a)(1). "Reasonable cause" is defined in Treas. Reg. § 301.6651–1(c)(1), which provides: "[I]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed period of time, then the delay is due to a reasonable cause...."

■ A taxpayer who reasonably relies on his accountant's advice that it is unnecessary to file a return will be deemed to have reasonable cause. *See, e.g., United States v. Boyle,* 469 U.S. 241, 250, 105 S.Ct. 687, 693, 83 L.Ed.2d 622 (1985); *United States v. Kroll,* 547 F.2d 393 (7th Cir.1977); *Burton Swartz Land Corp. v. Comm'r,* 198 F.2d 558 (5th Cir.1952); *Hatfried, Inc. v. Comm'r,* 162 F.2d 628 (3d Cir.1947).

■ The taxpayer has the burden to show that reliance on its accountant's ad-

vice was reasonable and that its accountant was well-informed of the facts and circumstances. *See Norton v. United States*, 213 Ct.Cl. 215, 225, 551 F.2d 821, 827, *cert. denied*, 434 U.S. 831, 98 S.Ct. 115, 54 L.Ed.2d 91 (1977); *Hatfried*, 162 F.2d at 632. Plaintiff's accountant averred that his firm was fully informed of all factual matters considered relevant or necessary for the advice given plaintiff. The accountant, both in 1976 and again in 1977, issued a letter advising plaintiff of its liability for federal income tax. These letters stated that because plaintiff was doing business in the United States, it should not be subject to excise tax. This written opinion lends support to plaintiff's argument that it had reasonable cause. *See Commissioner v. American Ass'n of Engr's Employment, Inc.*, 204 F.2d 19 (7th Cir.1953).

The court in *Burton Swartz Land Corp.* held that the taxpayer would not be penalized because his failure to file personal holding company returns was due to his good-faith reliance upon an accountant's advice that no such returns were necessary. 198 F.2d at 560. The Fifth Circuit reasoned that the accountant was well-informed of the taxpayer's business dealings, having prepared the tax returns since the taxpayer's organization. Likewise, plaintiff's accountant had prepared the organization's tax returns since 1973 when Luxembourg was founded.

Plaintiff's officers and directors are involved in the fishing vessel business and do not have the knowledge or expertise they sought in their accountant. As the court in *Hatfried* stated, "To accord the status of 'experts' on the tax laws to accountants for representation purposes and then to hold that the taxpayers who entrust to them the task of preparing their tax returns run the risk of paying heavy penalties should they err in the discharge of their assignment creates an absurd situation." 162 F.2d at 634.

Defendant contends that because of its substantial arguments on the variance doctrine, it should be allowed to discover the matter in plaintiff's affidavits if its motion on the variance doctrine is denied. RUSCC 56(f) afforded defendant the opportunity for discovery in aid of opposing summary judgment. The opponent must take or forego this discovery unless it moves for a suspension of discovery. The opponent cannot merely reserve the option in brief (as defendant noted in its reply brief). Certainly, an opponent of summary judgment can assume the risk of not taking discovery to enable it to respond to affidavits if the opponent's legal arguments are substantial or if the affidavits are not material. Here, defendant's argument was jurisdictional. If defendant prevailed, the court would be foreclosed from considering the merits of plaintiff's claim for refund of penalties based on reasonable reliance on its accountant's advice. However, defendant's jurisdictional argument was insubstantial, given the unequivocal case law recognizing that informal claims can be based on written protests antecedent to claims for refund. Whatever the deficiency of plaintiff's protest concerning the section 4373(1) exemption criteria, the protest and written supplement explicitly apprised the IRS of the argument plaintiff made in court against assessment of penalties. Defendant did not respond to these authorities or the merits of plaintiff's assertions concerning its protest. In these circumstances defendant cannot excuse its failure to make its record on summary judgment. It should also be noted that the briefing in this case has been protracted. To indulge defendant by reopening the record on summary judgment would be unwarranted. *See supra* note 2.

The undisputed facts establish that plaintiff relied in good faith on its accountant's advice and is entitled to a refund of the penalties assessed for failure to file Form 720 and deposit excise taxes.

## V. *The statute of limitations*

■ I.R.C. § 6501(a) imposes a three-year statute of limitations in which taxes are to be assessed after filing a return. However, if a return is never filed, then "the tax may be assessed ... at any time." I.R.C. § 6501(c)(3). For tax periods ending in years 1977 to 1979, plaintiff filed Form

1120M, an income tax return form, but never filed excise tax Form 720.[6]

The Supreme Court has confronted a similar situation where the taxpayer had in good faith filed the wrong tax form in *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940). The Court held that a return setting forth all necessary information to compute and assess the proper tax due will trigger the statute of limitations. It was determined that the taxpayer's fiduciary return contained the required data to calculate the tax. Hence, the filed return constituted a constructive return to start the statute of limitations running.

The issue in *Germantown* was analyzed further by the Court in the situation where the taxpayer was liable for two different taxes, but only filed one return. The single filed return addressed only one of the liabilities. In *Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684 (1944), the Court held that because the single return did not answer both liabilities and failed to "show the facts on which liability would be predicated," it was insufficient to notify the Commissioner of further tax liability. 321 U.S. at 223, 64 S.Ct. at 513. In *Germantown* and *Lane-Wells*, the Supreme Court established that the statute of limitations will run even if an incorrect return is filed, provided it supplies the IRS with complete information for the assessment and computation of the proper tax and is filed in good faith.

Plaintiff was aware of the possibility of excise tax liability and sought the advice of its accountant. Having relied in good faith on its accountant's advice, plaintiff filed Form 1120M. Defendant does not accept plaintiff's good-faith reliance on its accountant's advice, an issue resolved against defendant, and the parties also are not in agreement as to whether the filed return supplied the IRS with sufficient information for the alleged excise tax liability.

Defendant asserts that the placement of corporate income tax liability under Subtitle D (excise tax) makes it unlikely that filing under Subtitle A (income tax) would allow for computation of a tax under Subtitle D. However, the fact that excise tax liability falls under a different subtitle of the Code than the form filed does not answer the question whether the information supplied on the filed form was sufficient to notify the IRS of possible excise tax liability to assess excise tax.

Plaintiff contends that the returns supplied sufficient information to apprise the IRS of its potential liability for excise tax, since they fully disclosed plaintiff's United States insurance premium income and its status as a foreign insurer. Each return specifically states the amount of premiums earned during the corresponding tax years. The returns also state the place of incorporation as Bermuda and the name of business as "The Neptune Mutual Association Ltd. of Bermuda." This information alerted the IRS that section 4371(1) might apply and provided a basis for assessing tax. Since per part I of this opinion, a foreign casualty insurer is not subject to income tax unless it meets the exemption criteria of I.R.C. § 4373(1), plaintiff's filing an income tax form presupposed that it was both a foreign casualty insurer and exempt from excise tax. Section 842 imposes a tax independent of section 4371(1), but is related thereto due to the role of section 4373(1) exemption criteria.

Defendant seeks too harsh a result. Although defendant concedes that a foreign insurer is liable only for one of the two alternative taxes, defendant views the taxpayer's election as reckless. Contrary to defendant's argument, plaintiff does not ask absolution from independent tax liability, such as would be the case if a business taxpayer that paid income tax fails to pay withheld employee taxes. Since plaintiff's income tax return was adequate, plaintiff's liability should be restricted to the limitations period. Therefore, the statute of limitations has run for tax years ending on June 30, 1977, to June 30, 1978. The IRS is

---

6. Form 1120M was filed pursuant to I.R.C. § 842, an income tax provision for foreign corporations carrying on insurance business in the United States. Foreign insurers subject to I.R.C. § 4371 excise tax are to file Form 720.

barred from assessing excise tax, penalties, and interest for these tax years.

### VI. *Defendant's counterclaim*

Defendant's counterclaim of $70,825.05 represents the net outstanding balance due after subtracting payments made, overpayment credits, and interest abatements from the total original amount of excise tax, interest, and penalties that the IRS alleged plaintiff owed for the years 1973–1980. Since defendant has dropped its excise tax, interest, and penalty claims for 1973 through July 13, 1976, and since excise tax, interest, and penalty assessments for the tax years ending on June 30, 1977, and June 30, 1978, are barred by the statute of limitations, defendant's counterclaim should be reduced accordingly.

### CONCLUSION

Based on the foregoing, the parties' cross-motions for summary judgment are granted in part and denied in part. Plaintiff shall be refunded: 1) the net of excise tax payments over federal income tax payments, penalties, and interest for Luxembourg, consistent with the parties' disposition of this issue; 2) all penalties in respect of plaintiff itself; and 3) the difference between the amount of excise tax assessed, and interest thereon, and the amount paid as federal income tax for tax periods ending June 30, 1977, to June 30, 1978. Defendant shall recover on its counterclaim consistent with the foregoing. This determination having been made pursuant to RUSCC 42(c), the parties shall file a stipulation by October 30, 1987, as to the amount of net refund due plaintiff, if any, after taking into consideration defendant's counterclaim, or the net amount due the IRS on defendant's counterclaim. Upon the filing of this stipulation, the Clerk of the Court shall enter judgment. Costs shall not be awarded.

IT IS SO ORDERED.